|   |   |
|---|---|
| LAURA SEIDL, individually, derivatively and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>vs.<br><br>AMERICAN CENTURY COMPANIES, INC., AMERICAN CENTURY INVESTMENT MANAGEMENT, INC., JAMES E. STOWERS, JR., JAMES E. STOWERS, III, JONATHAN S. THOMAS, THOMAS A. BROWN, ANDREA C. HALL, DONALD H. PRATT, GALE A. SAYERS, M. JEANNINE STRANDJORD, TIMOTHY S. WEBSTER, WILLIAM M. LYONS, MARK MALLON, WADE SLOME, BRUCE WIMBERLY and JERRY SULLIVAN,<br><br>      Defendants.<br><br>      and<br><br>AMERICAN CENTURY MUTUAL FUNDS, INC., doing business as AMERICAN CENTURY ULTRA FUND,<br><br>      Nominal Defendant. | INDEX No. 08-CV-8857 (DLC)<br>ECF Case |

**FUND AND INDEPENDENT DIRECTORS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**

# **TABLE OF CONTENTS**

Page

Introduction ........................................................................................................................1

Argument ...........................................................................................................................2

    A.    Standard of Review .............................................................................................2

    B.    The Amended Complaint Fails to State a Claim for Relief Against the Independent Directors .........................................................................................3

        1.    Plaintiff's Conclusory Allegations are Not Entitled to the Assumption of Truth .....................................................................................4

        2.    The Amended Complaint Does Not Plausibly Suggest Plaintiff's Entitlement to Relief Under Either RICO or Common Law Theories of Liability .........................................................................................6

    C.    Plaintiff's Derivative Claims Must Be Dismissed For Failure To Adequately Plead Demand Futility ......................................................................7

        1.    Service by Directors on the Boards of Multiple Related Mutual Funds Does Not Excuse Demand .................................................................10

        2.    An Exception to the Demand Requirement for Alleged Exposure to Civil and Criminal Liability is Not Recognized Under Maryland Law ...............................................................................................................11

Conclusion .......................................................................................................................12

# TABLE OF AUTHORITIES

Page

## CASES

*Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328 (2d Cir. 2006) ................................. 3

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ................................................................................ 3, 4, 5

*In re Air Cargo Shipping Services Antitrust Litigation*, Number MD 06-1775, 2008
WL 5958061 (E.D.N.Y. Sept. 26, 2008) ................................................................................. 3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................... 3, 4

*Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122 (2d Cir. 2008) ............................................ 3

*In re CNL Hotels & Resorts, Inc. Securities Litigation*, No. 6:04cv1231, 2005 WL
2219283 (M.D. Fla. Sept. 13, 2005) ........................................................................................ 9

*Danielewicz v. Arnold*, 769 A.2d 274 (Md. Ct. Spec. App. 2001) ................................................. 7

*In re Davis Select Mutual Funds Litigation*, No. 04-civ-4186, 2005 WL 2509732
(S.D.N.Y. Oct. 11, 2005) ........................................................................................................ 12

*Felker v. Anderson*, No. 04-0372-CV, 2005 WL 602974 (W.D. Mo. Feb. 11, 2005) .................... 9

*In re Franklin Mutual Funds Fee Litigation*, 388 F. Supp. 2d 451 (D.N.J. 2005) ................... 9, 12

*Kamen v. Kemper Finance Services, Inc.*, 500 U.S. 90 (1991) .................................................. 7, 8

*Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123 (2d Cir. 2001) ........................... 2

*Scalisi v. Fund Asset Management, L.P.*, 380 F.3d 133 (2d Cir. 2004) ............................. 8, 11, 12

*In re Syntex Corp. Securities Litigation*, 855 F. Supp. 1086 (N.D. Cal. 1994) ............................. 6

*Washtenaw County Emp. Retirement System v. Wells Real Estate Investment Trust,
Inc.*, No. 07-CV-862-CAP, 2008 WL 2302679 (N.D. Ga. Mar. 31, 2008) ............................. 9

*Werbowsky v. Collomb*, 766 A.2d 123 (Md. 2002) ................................................. 8, 9, 10, 11, 12

## RULES & STATUTES

Fed. R. Civ. P. 12(c) ................................................................................................................... 1, 2

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 2

## TABLE OF AUTHORITIES
### (Continued)

Page

Fed. R. Civ. P. 23.1 ...................................................................................................7, 8, 9

Fed. R. Civ. P. 8(a) ............................................................................................................3, 4

Investment Company Act of 1940, 15 U.S.C. § 80a-1 to 80a-64 ......................................................1

Section 2(a)(19), Investment Company Act of 1940, 15 U.S.C. § 80a-2(a)(19) ..........................1, 9

Md. Code Ann., Corps & Ass'ns. § 2-405.3 ........................................................................1

### MISCELLANEOUS

*Commission Guidance Regarding the Duties and Responsibilities of Investment Company Boards of Directors with Respect to Investment Adviser Portfolio Trading Practices, Proposed Rule*, Investment Company Act Release No. 28345, 93 S.E.C. Docket 2469 (July 30, 2008)..................................................................................................7

Defendants Thomas A. Brown, Andrea C. Hall, Donald H. Pratt, Gale E. Sayers, M. Jeannine Strandjord, and Timothy S. Webster (the "Independent Directors")[1] and nominal defendant American Century Mutual Funds, Inc. ("the Fund"), doing business as American Century Ultra Fund (collectively, "Defendants"), respectfully submit this Memorandum in Support of Their Motion for Judgment on the Pleadings with respect to Plaintiff's Amended Verified Class Action and Derivative Complaint ("Amended Complaint" or "Am. Complaint") pursuant to Federal Rule of Civil Procedure 12(c). Defendants also join the motion made by the other defendants seeking judgment on the pleadings, and hereby incorporate by reference the arguments presented therein. For the reasons presented in the other defendants' motion and below, Defendants request their Motion for Judgment on the Pleadings be granted and Plaintiff's Amended Complaint be dismissed with prejudice.

## Introduction

As developed in the motion filed by the other defendants, even if Plaintiff could assert the claims in her Amended Complaint as direct claims, she has failed to state any claim on which relief can be granted. In addition, as to the Independent Directors, she has failed even to plead facts establishing their participation in the transactions at issue.

---

[1] The Investment Company Act of 1940, 15 U.S.C. §§ 80a-1 to 80a-64, the federal securities law governing the operation of mutual funds, identifies individuals employed by or affiliated with the investment adviser as "interested persons". See Section 2(a)(19), 15 U.S.C. § 80a-2(a)(19). The term "independent director" refers to a director who is not an "interested person" of the investment advisor (here American Century Investment Management, Inc. ("ACIM")). See Am. Complaint ¶ 21. Similarly, under Maryland law, a director is independent if he or she is not an interested person under the Investment Company Act. Md. Code Ann., Corps. & Ass'ns. § 2-405.3. The role of these independent directors is to serve on the board as the representatives of shareholders and, in this capacity, to provide oversight of the management process. None of the Independent Directors making this motion are employed by ACIM or otherwise involved in the day-to-day management of the Fund, and the Amended Complaint does not allege otherwise. See Am. Complaint ¶¶ 22-27. The Independent Directors note that Timothy S. Webster is no longer a director and that two of the current independent directors (not Defendants herein) were not directors of the Fund during the time period covered by the Amended Complaint.

Plaintiff alleges that all defendants violated federal law by knowingly developing and implementing (or conspiring to develop and implement) an investment strategy causing American Century Mutual Funds, Inc. to purchase shares of PartyGaming, a publicly traded company with an internet gambling website, through the Fund. The crux of both Plaintiff's RICO and common law claims is allegations that each Defendant was directly involved in making or approving the decision to purchase shares of PartyGaming. The role of mutual fund directors, however, is oversight of the management of the fund, not involvement in the day-to-day operations such as making individual investment decisions. Plaintiff has failed to plead any facts that would make plausible her conclusory allegations that *all* defendants were involved in the decision to purchase shares of PartyGaming. Her conclusory allegations are entitled to no weight; absent specific factual allegations as to the involvement of the Independent Directors in the challenged transactions, the claims against them must be dismissed.

Moreover, the claims Plaintiff seeks to assert would belong to the Fund and could only be asserted by it. Plaintiff in the alternative seeks to assert claims derivatively on behalf of the Fund, but her derivative claims are fatally flawed because she has failed to make demand on the Fund's board of directors to bring such claims and the allegations of her Amended Complaint do not establish under applicable law that demand would have been futile.

## Argument

A.  **Standard of Review**

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion [to dismiss] for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (citations omitted). In deciding a Rule 12(b)(6) motion, the Court must accept the factual allegations in the complaint as true and

2

draw all reasonable inferences in favor of the plaintiff. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (citation omitted). However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (modifications in original) (citation omitted). A complaint will only survive a motion to dismiss if its allegations "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted). Accordingly, "naked assertion[s] devoid of further factual enhancement" are insufficient; instead the complaint must amplify its allegations with "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks and citations omitted). A reasonable inference is not established when a complaint lumps together defendants and does not differentiate their conduct. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, No. MD 06-1775, 2008 WL 5958061, *10-11 (E.D.N.Y. Sept. 26, 2008) (finding Rule 8(a) pleading requirement not met where complaint lumped together all defendants into each allegation while simultaneously suggesting that defendants' conduct was not uniform).

**B.    The Amended Complaint Fails to State a Claim for Relief Against the Independent Directors**

Plaintiff's RICO and common law claims for relief against the Independent Directors are premised upon the Independent Directors' direct involvement in causing the Fund to purchase

3

shares of a publicly traded company engaging in certain practices later found to be illegal. Under recent Supreme Court precedent, whether Plaintiff's allegations satisfy the pleading requirements of Rule 8(a)(2), and "nudge[] [Plaintiff's] claims across the line from conceivable to plausible," requires a two-pronged analysis. *Twombly*, 550 U.S. at 570. The district court must first "identify[] the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1951. The district court then considers the remaining well-pleaded factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* When its conclusory statements and legal conclusions are ignored, the Amended Complaint falls far short of meeting the plausibility standard enunciated by the Supreme Court.

1. **Plaintiff's Conclusory Allegations are Not Entitled to the Assumption of Truth**

The Amended Complaint alleges that "[e]ach of the Defendants knowingly developed and implemented (or conspired to develop and implement) an investment strategy pursuant to which ACMF, through the Fund, was caused repeatedly and over a significant period of time to purchase shares in [PartyGaming]." Am. Complaint ¶ 36. As factual support for the Independent Directors' knowing development and implementation of this investment strategy, the Amended Complaint states that "[e]ach of the Defendants agreed to cause, and participated in a scheme to cause, ACMF to purchase stock in an illegal gambling business." *Id.* ¶ 54. As factual support for the Independent Directors' involvement in a conspiracy to develop and implement the investment strategy, the Amended Complaint states: "(a) Defendants agreed to cause ACMF to invest in an illegal gambling business. (b) In furtherance of such conspiracy, Defendants caused ACMF to make investments in an illegal gambling business." *Id.* ¶ 68. The Amended Complaint also alleges that "Defendants conducted or caused to be conducted, or were reckless in failing to conduct or cause to be conducted, due diligence before ACMF purchased

4

stock in an illegal gambling business. Accordingly, Defendants each knew, or is deemed to have known, that they were causing ACMF to purchase stock of a company [involved in illegal gambling]." *Id.* ¶ 63.

Notably, each of the above allegations refers to the defendants collectively, and does not distinguish between the Fund, ACIM, the Fund's portfolio managers, or the Independent Directors. The Amended Complaint's only allegations directed to the directors, though not the Independent Directors specifically, are that "[e]ach of the Directors allowed ACMF, through the Fund, to invest or continue its investments in an illegal gambling business," and that, "[b]ecause of widely publicized 'red flags' waved by international media concerning the illegality of investments such as PartyGaming, the Directors knew or were reckless in not knowing that ACMF's investments in PartyGaming was [sic] illegal."[2] *Id.* ¶¶ 24, 91.

The above "facts" are merely conclusory allegations, and thus are not entitled to the assumption of truth. Indeed, they exemplify the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," disfavored by the Supreme Court because they make no specific mention of any Independent Director individually or even the Independent Directors as a group. *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). Accordingly, these and similar allegations need not be considered as true in the Court's determination of whether Plaintiff has stated any claim for relief.

---

[2] To the extent that this statement suggests that the media publicized the illegality of investing in PartyGaming, it is not supported by the allegations in the Complaint. The Complaint only alleges that the media reported on the illegality of PartyGaming's practices, not the purchase of PartyGaming shares.

5

2. **The Amended Complaint Does Not Plausibly Suggest Plaintiff's Entitlement to Relief Under Either RICO or Common Law Theories of Liability**

When Plaintiff's conclusory statements are set aside, the Amended Complaint provides no factual allegations relating to the involvement of the Independent Directors that would allow the Court to find that Plaintiff has stated a claim against them under any theory of liability. Even accepting as true allegations that the Independent Directors served alongside Management Directors on the Fund's board of directors and that the Fund purchased shares of PartyGaming in 2005 and 2006, the Amended Complaint fails to allege any facts as to the purported involvement of the Independent Directors in the specific investment decision to purchase shares of PartyGaming. Indeed, the Amended Complaint never alleges how, when, or if the Independent Directors even approved the Fund's purchase of PartyGaming shares. As explained below, such involvement in specific security selection would be inconsistent with their role as one of oversight. The most specific allegation that Plaintiff makes as to the directors is that they "allowed" the investment management company to invest in shares of PartyGaming. Am. Complaint at ¶ 24. That in itself is a conclusory allegation entitled to no weight and only serves to underscore the facial implausibility of Plaintiff's allegations elsewhere that *all* of the defendants were involved in the decision to purchase the shares.

As implied by Plaintiff, it is far more plausible that the Independent Directors had no specific knowledge of, or involvement in, the Fund's investments in PartyGaming. Independent directors generally are removed from daily management because, "[b]y definition, outside directors do not participate in the corporation's day-to-day affairs." *In re Syntex Corp. Secs. Litig.*, 855 F. Supp. 1086, 1100 (N.D. Cal. 1994). Plaintiff has not made any allegation that the Independent Directors have deviated from this general practice. As the Securities and Exchange Commission has noted, the role of a mutual fund's board of directors is one of oversight, a role

in which "directors are not required or expected to monitor each trade" made by the mutual fund's investment adviser. *Commission Guidance Regarding the Duties and Responsibilities of Investment Company Boards of Directors with Respect to Investment Adviser Portfolio Trading Practices, Proposed Rule*, Investment Company Act Release No. 28345, 93 S.E.C. Docket 2469 (July 30, 2008). Accordingly, the Independent Director's status, as non-management directors of the Fund, is insufficient to impute their direct involvement in the development and implementation of an investment strategy regarding one particular portfolio security, and Plaintiff has not alleged any other facts that would make plausible her assertion of such involvement.

### C. Plaintiff's Derivative Claims Must Be Dismissed For Failure To Adequately Plead Demand Futility

As Plaintiff alleges, the Fund is organized under Maryland law. Accordingly, the law of Maryland governs whether claims may be asserted directly by shareholders or instead belong to the Fund and may only be asserted by shareholders as derivative claims. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 97-101 (1991) (stating that law of the state of incorporation governs substantive issues of corporate governance). Under Maryland law, the general rule is that "an injury to a corporation can be brought only in the name of the corporation itself acting through its directors, and not by an individual stockholder though the injury may incidentally result in diminishing or destroying the value of the stock." *Danielewicz v. Arnold*, 769 A.2d 274, 283 (Md. Ct. Spec. App. 2001) (citation omitted). As explained in greater detail in the memorandum of the other defendants, each of Plaintiff's claims is derivative and belongs to the Fund, not to Plaintiff directly. Because Plaintiff's claims are derivative, the Amended Complaint must comply with Rule 23.1 ("Derivative Actions") and "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if

necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3).

Rule 23.1 embodies the requirement that when asserting derivative claims, a complaint must plead with particularity whether demand upon the corporation was made, or why it was not made. As with other substantive issues of corporate governance, questions relating to demand are resolved by applying the law of the state of incorporation. *See Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 138 (2d Cir. 2004). The purpose of the demand requirement is to afford directors an opportunity "to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right." *Kamen*, 500 U.S. at 96 (internal quotation marks and citations omitted). The demand requirement also "gives the directors-even interested, non-independent directors-an opportunity to consider, or reconsider, the issue in dispute." *Werbowsky v. Collomb*, 766 A.2d 123, 144 (Md. 2002).

Plaintiff acknowledges that she has made no demand on the Fund directors and instead argues she is excused from doing so because demand would have been futile. Am. Complaint ¶ 81. While demand may be excused when futile, *id.* at 144, Plaintiff's Amended Complaint fails to allege facts that would support a finding of futility under Maryland law and thus fails to meet the requirements of Rule 23.1. Under Maryland law, the demand futility exception is:

> a very limited exception, to be applied only when the allegations or evidence clearly demonstrate, in a particular manner, either that (1) a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation, or (2) a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule.

*Id.* at 144.

8

Because Plaintiff has not alleged (and could not allege) that delay would cause irreparable harm, in order to meet the requirements of Rule 23.1 and Maryland law, Plaintiff must state with particularity facts showing that a majority of the Fund's *current* directors are so personally conflicted or committed to the Fund's purchase of PartyGaming shares that they cannot reasonably consider a demand. This second prong of the Maryland test is exceedingly difficult to meet. *See, e.g., Washtenaw County Emp. Ret. Sys. v. Wells Real Estate Inv. Trust, Inc.*, No. 07-CV-862-CAP, 2008 WL 2302679, *14 (N.D. Ga. Mar. 31, 2008) (listing over dozen cases applying *Werbowsky* and finding that demand was required).[3] Plaintiff has failed to allege any facts that would support a conclusion that the directors cannot reasonably consider a demand. For example, even if Plaintiff had alleged specific facts showing that all of the directors had approved the purchase of the shares (and she has not so alleged), "[m]ere approval of the challenged transactions . . . is not enough to excuse the failure to make a demand." *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 470 (D.N.J. 2005) (citing *Werbowsky*, 762 A.2d at 143-44).

During the time period at issue, the Fund board was comprised of nine directors, the majority of whom were independent directors, or were not "interested persons" as defined by Section 2(a)(19) of the Investment Company Act. *See* Am. Complaint ¶ 22-24 (alleging only that two of the director defendants held positions with ACIM or its parent). Although the Independent Directors comprised a majority of the Fund's board, Plaintiff has failed to allege with particularity that any Independent Director was personally involved in the decision to

---

[3] The lone opinion in which a court found demand was excused, *Felker v. Anderson*, No. 04-0372-CV, 2005 WL 602974 (W.D. Mo. Feb. 11, 2005), has been criticized by two subsequent opinions, *Washtenaw* and *In re CNL Hotels & Resorts, Inc. Secs. Litig.*, No. 6:04cv1231, 2005 WL 2219283 (M.D. Fla. Sept. 13, 2005), as unpersuasive.

9

purchase PartyGaming shares.[4] Neither does Plaintiff allege that any Independent Director received any benefit from the Fund's holdings of PartyGaming. Accordingly, there is no basis for the assertion that all of the directors or even a majority of the directors are so personally conflicted or committed to the Fund's purchase of PartyGaming shares that they cannot reasonably consider a demand. *Werbowsky*, 766 A.2d at 144. Nonetheless, Plaintiff argues that demand is futile because: (1) the entire board of directors, including the Independent Directors, "have an inherent conflict in determining a demand" and (2) "a majority of the board of directors have a disabling interest because they are exposed to a substantial likelihood of criminal and civil liability." Am. Complaint ¶ 81. Both arguments fail.

### 1. Service by Directors on the Boards of Multiple Related Mutual Funds Does Not Excuse Demand

Plaintiff alleges that the entire board of directors is inherently conflicted because, were the Plaintiff to prevail in the underlying litigation on her RICO claims, ACIM, the investment adviser, would be required to forfeit three times the fees it received in connection with its management of the Fund, which would harm other mutual funds managed by ACIM and on whose boards the directors also sit and to whose investors the directors owe fiduciary duties. *Id.* ¶ 85. As explained in the other defendants' memorandum, Plaintiff's RICO claims fail as a matter of law, and so her demand futility argument too must fail. But even if Plaintiff's RICO allegations state a claim for relief, Plaintiff has failed to plead with particularity that demand is excused.

Plaintiff's discussion of the directors' fiduciary duties to other mutual funds and their investors is a red herring. The *Werbowsky* test does not inquire into whether a successful suit

---

[4] Furthermore, there are now two additional independent directors who were not on the board during the relevant period.

against an investment adviser would possibly harm other mutual funds to which the directors owe fiduciary duties, but only inquires into whether "a majority of the directors are so personally and directly conflicted or committed *to the decision in dispute* . . . ." *Werbowsky*, 766 A.2d at 144 (emphasis added). Here, the decision in dispute is the Fund's investment in shares of PartyGaming, not the consideration of the demand itself. Furthermore, the Court of Appeals for the Second Circuit has examined a factual scenario indistinguishable in all significant respects from this case and concluded that demand was not excused. Applying *Werbowsky*, the Second Circuit concluded that demand was not excused where shareholders of a mutual fund sought to bring a derivative claim on behalf of the fund against the parent of the investment adviser, despite eight of nine independent directors serving on the boards of forty-nine other related mutual funds managed by the same investment adviser. *See Scalisi*, 380 F.3d at 138-42.

### 2. An Exception to the Demand Requirement for Alleged Exposure to Civil and Criminal Liability is Not Recognized Under Maryland Law

Plaintiff also argues that demand is excused because a majority of the board of directors "face[s] a substantial likelihood of personal criminal or civil liability." Am. Complaint ¶ 87. Initially, Plaintiff has failed to allege facts from which the Court could find that Plaintiff has established that any director faces "a substantial likelihood of personal criminal or civil liability," much less a majority of the directors. Even if Plaintiff had alleged sufficient facts to establish this assertion, however, her claim of futility would still fail under Maryland law. Although certain decisions applying *Delaware* law have recognized an exception to the demand requirement where there is a substantial threat of liability, we have found no decision expanding the *Werbowsky* test to include such an exception under *Maryland* law, which controls here. Even if Delaware law were to apply, the threat of liability is remote because Plaintiff's RICO claims fail as a matter or law and, more tellingly, in the years since the Fund sold its holdings of

PartyGaming, there have been no prosecutions against the directors and "[n]o other litigation concerning this controversy has been commenced. . . ." *Id.* ¶ 98.

Moreover, evaluating whether a majority of the directors face a substantial threat of liability also requires an inquiry into whether a violation of RICO or of a director's fiduciary duties actually occurred. Such an inquiry directly conflicts with the Maryland Court of Appeals' rationale for its limited exception to the demand requirement, that the test "focus[] the court's attention on the real, limited, issue-the futility of a pre-suit demand-and avoid[] injecting into a preliminary proceeding issues that go more to the merits of the complaint. . . ." *Werbowsky*, 766 A.2d at 620. Plaintiff also notes that the Fund's directors would be required to sue themselves, but "[u]nder Maryland law, these allegations are insufficient to excuse demand."[5] *In re Davis Select Mut. Funds Litig.*, No. 04-civ-4186, 2005 WL 2509732, *3 (S.D.N.Y. Oct. 11, 2005).

## Conclusion

For the foregoing reasons, the Fund and the Independent Directors respectfully request that the Court grant their Motion for Judgment on the Pleadings and dismiss Plaintiff's Amended Complaint with prejudice.

---

[5] Plaintiff also claims, although not directly, the demand is excused because the investment adviser selects the Fund's board of director and so the "relationship between ACC, ACIM, ACMF and the directors is fraught with conflicts of interest." Am. Complaint ¶ 90. Putting aside the fact that Plaintiff ignores the role of independent nominating committees and shareholders in the selection of directors, courts have routinely rejected this argument. *See, e.g., Scalisi*, 380 F.3d 133 (demand required where fund board members chosen by parent company and investment adviser); *In re Franklin Mut. Funds*, 388 F. Supp. 2d 451 (demand required where directors were appointed by investment advisors).

Dated: July 2, 2009

/s/ David P. Langlois
David P. Langlois (DL 2319)
SUTHERLAND ASBILL & BRENNAN LLP
1114 Avenue of the Americas
40th Floor
New York, New York 10036-7703
Phone: 212-389-5000
Fax: 212-389-5099
Email: david.langlois@sutherland.com

Marguerite C. Bateman *
Steuart H. Thomsen*
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, NW
Washington, DC 20004
Phone: 202-383-0100
Fax: 202-637-3593
Email: marguerite.bateman@sutherland.com
    steuart.thomsen@sutherland.com

*(Admitted Pro Hac Vice)

*Attorneys for Defendants Thomas A. Brown, Andrea C. Hall, Donald H. Pratt, Gale E. Sayers, M. Jeannine Strandjord, and Timothy S. Webster, and nominal defendant American Century Mutual Funds, Inc., doing business as American Century Ultra Fund*