# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

LAURA SEIDL, individually, derivatively and on
behalf of all others similarly situated,

        Plaintiff,

   vs.

AMERICAN CENTURY COMPANIES, INC.,
AMERICAN CENTURY INVESTMENT
MANAGEMENT, INC., JAMES E. STOWERS, JR.,
JAMES E. STOWERS, III, JONATHAN S. THOMAS,
THOMAS A. BROWN, ANDREA C. HALL,
DONALD H. PRATT, GALE A. SAYERS, M.
JEANNINE STRANDJORD, TIMOTHY S.
WEBSTER, WILLIAM M. LYONS, MARK
MALLON, WADE SLOME, BRUCE WIMBERLY
and JERRY SULLIVAN,

        Defendants.

     and

AMERICAN CENTURY MUTUAL FUNDS, INC.,
doing business as AMERICAN CENTURY ULTRA
FUND,

        Nominal Defendant.

INDEX No. 08-CV-8857 (DLC)
ECF Case

**DEFENDANTS' MOTION FOR JUDGMENT
ON THE PLEADINGS**

TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................................ 1

FACT ALLEGATIONS........................................................................................................... 3

ARGUMENT ....................................................................................................................... 4

I.  LEGAL STANDARD ................................................................................................. 4

II.  GROUNDS FOR DISMISSAL OF RICO CLAIMS ......................................................... 5

   A.  As this Court Has Already Held, Plaintiff Cannot State a Claim Under
        RICO Because Defendants' Investment Decision Was Not the Proximate
        Cause of Plaintiff's Injury; Plaintiff Lacks Standing............................................. 5

   B.  Plaintiff Fails to Plead a Predicate Act Under RICO............................................. 8

   C.  Plaintiff Fails to Allege a "Pattern of Racketeering Activity"............................ 10

III.  GROUNDS FOR DISMISSAL OF RICO CLAIMS AND COMMON LAW CLAIMS...................... 12

   A.  All of Plaintiff's Direct Claims Should Be Dismissed Because any Alleged
        Injury Is Derivative, Not Direct ......................................................................... 12

        1.  Direct RICO Claims Should Be Dismissed .............................................. 12

        2.  Direct Common Law Claims Should Be Dismissed................................ 13

   B.  All of Plaintiff's Derivative Claims—both RICO and State Law Claims—
        Should Be Dismissed Because they Fail to  Plead Demand Futility .................. 15

IV.  GROUNDS FOR DISMISSAL OF COMMON LAW CLAIMS .................................................... 19

   A.  Maryland Law Does Not Recognize an Independent Breach of Fiduciary
        Duty Claim........................................................................................................ 19

   B.  Negligence and Breach of Fiduciary Duty.......................................................... 19

        1.  Plaintiff Fails to Allege That Defendants Breached their Duties to
             Shareholders..................................................................................... 20

        2.  Plaintiff Fails to Plead Proximate Cause ................................................ 22

   C.  Waste................................................................................................................ 24

CONCLUSION...................................................................................................................... 25

TABLE OF AUTHORITIES

PAGE

<u>CASES</u>

*Achtman v. Kirby, McInerney & Squire, LLP*,
  464 F.3d 328 (2d Cir. 2006) ................................................................................. 4

*Anisfeld v. Cantor Fitzgerald & Co.*,
  631 F. Supp. 1461 (S.D.N.Y. 1986) ..................................................................... 11

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ............................................................................................. 5

*Aronson v. Lewis*,
  473 A.2d 805 (Del. 1984) ..................................................................... 15, 16, 18

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) .................................................................................. 5, 16

*Baisch v. Gallina*,
  346 F.3d 366 (2d Cir. 2003) ................................................................................. 6

*Basic, Inc. v. Levinson*,
  485 U.S. 224 (1988) ........................................................................................... 21

*Bender v. Schwartz*,
  917 A.2d 142 (Md. Ct. Spec. App. 2007) .......................................................... 20

*Bokat v. Getty Oil Co.*,
  262 A.2d 246 (Del. 1970) ................................................................................... 14

*Boykin v. KeyCorp*,
  521 F.3d 202 (2d Cir. 2008) ................................................................................. 4

*Brehm v. Eisner*,
  746 A.2d 244 (Del. 2000) ................................................................................... 24

*Collins v. Luper*,
  277 A.2d 445 (Md. Ct. Spec. App. 1971) .......................................................... 22

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) ................................................................................. 5

*Dieterich v. Harrer*,
  857 A.2d 1017 (Del. Ch. 2004) .......................................................................... 15

*Discon, Inc. v. NYNEX Corp.*,
  93 F.3d 1055 (2d Cir. 1996), *vacated on other grounds*, 525 U.S. 128 (1998) ...... 10

*Gay v. State of Md. Deposit Ins. Fund Corp.*,
  521 A.2d 1205 (Md. Ct. App. 1987) .............................................................. 21, 22

*Hecht v. Commerce Clearing House, Inc.*,
  897 F.2d 21 (2d Cir. 1990) ................................................................................... 5

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*H.J. Inc. v. Nw. Bell Tel. Co.,*
  492 U.S. 229 (1989)..................................................................................... 10, 11

*Hogan v. Baker,*
  No. Civ. A. 305CV0073P, 2005 WL 1949476, at *4 (N.D. Tex. Aug. 12,
  2005) ............................................................................................................ 14

*In re Am. Express Co. Shareholder Litig.,*
  39 F.3d 395 (2d Cir. 1994)............................................................................ 7, 8

*In re BP p.l.c. Derivative Litig.,*
  507 F. Supp. 2d 302 (S.D.N.Y. 2007) .......................................................... 13

*In re Evergreen Mut. Funds Fee Litig.,*
  423 F. Supp. 2d 249 (S.D.N.Y. 2006) .......................................................... 13

*In re NYFIX, Inc. Derivative Litig.,*
  567 F. Supp. 2d 306 (D. Conn. 2008)........................................................... 18

*Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.,*
  No. Civ. RDB 05-841, 2005 WL 2989343 at *4 (D. Md. Nov. 3, 2005) ............ 13

*Kamen v. Kemper Fin. Servs., Inc.,*
  500 U.S. 90 (1991)........................................................................................ 15

*Kramer v. W. Pac. Indus., Inc.,*
  546 A.2d 348 (Del. 1988).............................................................................. 14, 15

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,*
  191 F.3d 229 (2d Cir. 1999).......................................................................... 23

*Lakonia Management Ltd. v. Meriwether,*
  106 F. Supp. 2d 540 (S.D.N.Y. 2000) .......................................................... 12

*Law v. Law,*
  753 A.2d 443 (Del. 2000) ............................................................................. 21

*Lerner v. Fleet Bank, N.A.,*
  318 F.3d 113 (2d. Cir. 2003).......................................................................... 7

*Lerner v. Fleet Bank, N.A.,*
  459 F.3d 273 (2d Cir. 2006).......................................................................... 23

*Lopez v. Lopez,*
  243 A.2d 588 (Md. 1968) ............................................................................. 21

*Mangiafico v. Blumenthal,*
  471 F.3d 391 (2d Cir. 2006).......................................................................... 5

*Manson v. Stacescu,*
  11 F.3d 1127 (2d Cir. 1993)........................................................................... 12

*McBrearty v. The Vanguard Group, Inc.,*
  No. 08-civ-7650, 2009 WL 875220 (S.D.N.Y. April 2, 2009)..................... *passim*

TABLE OF AUTHORITIES
(CONTINUED)

*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d Cir. 2007)................................................................. 4

*Mona v. Mona Elec. Group, Inc.*,
  934 A.2d 450 (Md. Ct. Spec. App. 2007) ............................................ 20

*Peterson v. Underwood*,
  264 A.2d 851 (Md. Ct. App. 1970)...................................................... 22

*Rand v. Anaconda-Ericsson, Inc.*,
  794 F.2d 843 (2d Cir. 1986)................................................................ 12

*Rattner v. Bidzos*,
  No. Civ. A. 19700, 2003 WL 22284323, at *14 (Del. Ch. Sept. 30, 2003)............ 18

*Scalisi v. Fund Asset Mgmt., L.P.*,
  380 F.3d 133 (2d Cir. 2004)................................................................ 17

*Sekuk Global Enters. Profit Sharing Plan v. Kevenides, et al.*,
  Nos. 24-C-03-007496, 24-C-03-007876, and 24-C-03-008010, 2004 WL
  1982508 (Md. Cir. Ct. 2004) .............................................................. 17

*Seminaris v. Landa*,
  662 A.2d 1350 (Del. Ch. 1995)........................................................... 18

*Shofer v. Stuart Hack Co.*,
  723 A.2d 481 (Md. Ct. Spec. App. 1999) ............................................ 19

*Sindler v. Litman*,
  887 A.2d 97 (Md. Ct. Spec. App. 2005) .............................................. 23

*Spool v. World Child Int'l Adoption Agency*,
  520 F.3d 178 (2d Cir. 2008)................................................... 10, 11, 12

*Steiner v. Meyerson*,
  Civ. A. No. 13139, 1995 WL 441999, at *1 (Del. Ch. July 19, 1995) ................ 24

*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*,
  845 A.2d 1031 (Del. 2004) ........................................................... 13, 14

*United States v. Bridges*,
  493 F.2d 918 (5th Cir. 1974) ............................................................... 9

*Vinogradova v. Suntrust Bank, Inc.*,
  875 A.2d 222 (Md. Ct. Spec. App. 2005) ............................................ 19

*Werbowsky v. Collomb*,
  766 A.2d 123 (Md. Ct. App. 2001)............................................ 15, 16, 17, 24

*White v. Panic*,
  783 A.2d 543 (Del. 2001) .................................................................. 24

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

## STATUTES

18 U.S.C.
  § 1955 ................................................................................................................. 8, 9
  § 1961 ....................................................................................................................... 1
  § 1961(5) ................................................................................................................... 9
  § 1964(c) ............................................................................................................. 5, 17

Federal Rule of Civil Procedure
  12(b)(6) ..................................................................................................................... 4
  23.1 .................................................................................................................... 14, 17
  12(c) ..................................................................................................................... 1, 4

Federal Rule of Evidence
  201(b)(2) .................................................................................................................. 5

MD Corp. Code
  § 2-405.1(a) ............................................................................................................ 20
  § 2-405.1(a)(3) ....................................................................................................... 20
  § 2-405.1(e) ............................................................................................................ 20

## OTHER AUTHORITIES

H.R. Rep. No. 91-1549, § 802 (1970) ......................................................................... 9

Pursuant to Fed R. Civ. P. 12(c), Defendants American Century Companies, Inc. ("ACC"), American Century Investment Management, Inc. ("ACIM"), James E. Stowers, Jr., James E. Stowers, III, Jonathan S. Thomas, William M. Lyons, Mark Mallon, Wade Slome, Bruce Wimberly, and Jerry Sullivan (together, "Defendants"), respectfully request that the Court dismiss Plaintiff's Amended Verified Class Action and Derivative Complaint with prejudice.

## Preliminary Statement

Plaintiff brings this action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq. (2000) and state common law based on otherwise typical shareholder complaints about stock price declines. Plaintiff alleges that at some time in 2006, when share prices in overseas gambling companies declined, caused by a U.S. government "crackdown" on their operations, the American Century Ultra Fund (the "Fund") and its shareholders suffered a loss. Plaintiff does not accuse Defendants of any inaccuracy or deception in Defendants' dealings with Plaintiff or with the purported class. Instead, Plaintiff complains that Defendants' simple and unadorned act of buying shares in a publicly-traded overseas gambling company, which it held as one of many stock holdings in a mutual fund investment portfolio (a fund in which Plaintiff claims to have invested), resulted in monetary loss to Plaintiff. The named plaintiff sues not only on behalf of a purported class of the Fund's investors, but also on behalf of the Fund itself, which is named as a nominal defendant. Plaintiff sues the Fund (as a nominal defendant), the Fund's investment advisor and board of directors, the investment advisor's parent company, and various former and current officers and employees of each.

Plaintiff's RICO claims are legally deficient for all the reasons enunciated by this Court in its recent decision in *McBrearty v. The Vanguard Group, Inc.*, No. 08-civ-7650, 2009 WL

875220 (S.D.N.Y. April 2, 2009) (Cote, J.).  In terms of Plaintiff's allegations and theories of liability, *Vanguard* is indistinguishable from the instant case.  In *Vanguard*, the Court found that plaintiff shareholders did not, and could not, adequately plead proximate cause because they were injured *not* as a result of the defendants' investment decision, but as a result of the reaction of the market to the government's investigation of overseas gambling operations generally.  The Court further held that plaintiffs failed to satisfy the foreseeability requirement under RICO because they were not the intended targets of the alleged RICO violations but were the intended beneficiaries of the gambling investments.  As a result, the Court dismissed that complaint without leave to amend.  The Court should do the same here.

In addition, this memorandum presents further, independent grounds for dismissal of the RICO and the common law counts.[1]  First, as to the RICO claims, Plaintiff has also failed to adequately plead a "pattern of racketeering activity."  Second, as to all of the counts, even if the challenged investments could (theoretically) support some substantive claim, dismissal would remain necessary here because any such claim would belong exclusively to the Fund as a derivative claim, not a direct claim by plaintiff shareholders.  It is well-settled that shareholders cannot assert direct claims—including RICO claims—where the injury alleged is a decline in value of their shares in proportion to their share ownership where caused by an injury to the entity in which they hold shares.  Such claims are derivative and can only be asserted as such and only after a demand has been made or demand futility effectively pled.  Plaintiff has not made a demand nor satisfied the pleading requirements to show demand futility.  Finally, Plaintiff has

---

[1] In addition to the arguments herein, Defendants also join the Fund and Independent Directors' motion in all respects and incorporate their arguments fully by reference.  *See* Fund and Independent Directors' Memorandum of Law in Support of their Motion for Judgment on the Pleadings on Plaintiff's Amended Class Action and Derivative Complaint ("Fund and Ind. Directors' Mot.").

failed to adequately plead her common law claims of breach of fiduciary duty, negligence, and waste.

### Fact Allegations

ACC (a Maryland corporation) is an investment company that is alleged to control the Fund (also a Maryland corporation), through its subsidiary ACIM (a Delaware corporation).  *See* Amended Verified Class Action and Derivative Complaint ("Complaint") ¶¶ 18, 19, 20.  The Fund offers a series of shares representing interests in the Fund.  (*Id.* ¶ 16.)  Plaintiff alleges that she is a shareholder in the Fund.  (*Id.* ¶ 2.)

James E. Stowers, Jr. is Vice Chairman of the Fund, a director and controlling shareholder of ACC, and a director of ACIM.  (*Id.* ¶ 22.)  Jonathan S. Thomas is the President and Chief Executive Officer of the Fund.  (*Id.* ¶ 23.)  James E. Stowers, III, Thomas A. Brown, Andrea C. Hall, Donald H. Pratt, Gale E. Sayers, M. Jeannine Strandjord, and Timothy S. Webster (collectively and together with Mssrs. Stowers Jr. and Thomas, the "Directors") are (or were) members of the board of directors of the Fund.  (*Id.* ¶ 24.)  William M. Lyons was President of the American Century Mutual Funds, Inc. ("ACMF") from September 2000 through January 2007.  (*Id.* ¶ 25.)  Mark Mallon was the Executive Vice President and Chief Investment Officer of ACC and ACIM.  (*Id.* ¶ 26.)  Wade Slome, Bruce Wimberly, and Jerry Sullivan were co-portfolio managers of the Fund.  (*Id.* ¶ 27.)

Plaintiff alleges that at various times, in or about June and July 2005, Defendants caused the Fund to purchase millions of shares of an "illegal gambling business" called PartyGaming. (*Id.* ¶¶ 37, 38.)  Plaintiff alleges that by causing the Fund to purchase stock in an illegal gambling business, Defendants caused the Fund to finance and to become an "owner" of part of an illegal gambling business in violation of 18 U.S.C. § 1955.  (*Id.* ¶ 48.)  Plaintiff next alleges that on

June 1, 2006, a US grand jury indicted a different Internet gambling business, London based

BetOnSports Plc, for racketeering, mail fraud, and running an illegal gambling enterprise.  (*Id*. ¶

50.)  Plaintiff further alleges that after the public disclosures of the BetOnSports indictment,

PartyGaming's share prices fell.  (*Id*. ¶ 51.)  Plaintiff does not allege any other material cause for

the drop in PartyGaming's share price other than PartyGaming's anticipated loss of allegedly

illegal US-based gambling revenue caused by the government enforcement efforts.  (*Id*. ¶ 52.)

Plaintiff alleges that on or after July 16, 2006, but prior to July 31, 2006, the Fund sold all of its

shares of PartyGaming, realizing millions of dollars in losses.  (*Id*. ¶ 53.)

<u>**Argument**</u>

## I.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), the standard for a motion for judgment on

the pleadings is identical to that for a Rule 12(b)(6) motion for failure to state a claim: the court

must "accept as true all factual statements alleged in the complaint and draw all reasonable

inferences in favor of the non-moving party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d

184, 191 (2d Cir. 2007).  Furthermore, "[c]onclusory allegations or legal conclusions

masquerading as factual conclusions will not suffice to defeat a motion to dismiss."  *Achtman v.

Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).  A court

should apply a "flexible plausibility standard," which requires a pleader to amplify a claim with

some factual allegations in situations where such amplification is needed to render the claim

plausible.  *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008) (citation and internal quotation

marks omitted).  As the Supreme Court has recently stated, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

## II.   GROUNDS FOR DISMISSAL OF RICO CLAIMS

### A.   As this Court Has Already Held, Plaintiff Cannot State a Claim Under RICO Because Defendants' Investment Decision Was Not the Proximate Cause of Plaintiff's Injury; Plaintiff Lacks Standing

A plaintiff has standing to bring a claim under RICO only if he or she has been "injured in his business or property *by reason of* a violation of section 1962 of this chapter."  18 U.S.C. § 1964(c) (emphasis added); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) ("A RICO plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the RICO violation") (internal quotations omitted).  "But-for" causation is not sufficient; a plaintiff must also show that her alleged injuries were proximately caused by the alleged racketeering activity.  *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990).  In assessing RICO proximate causation, "the central question [a court] must ask is whether the alleged violation led directly to the plaintiff's injuries."  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

Plaintiff here cannot establish proximate cause.  Plaintiff's allegations in this case are factually identical to, and therefore legally indistinguishable on this motion from, those at issue in this Court's recent decision in *McBrearty v. The Vanguard Group, Inc.*, No. 08-civ-7650, 2009 WL 875220 (S.D.N.Y. April 2, 2009) (Cote, J.).  A copy of the complaint in the *Vanguard* case is attached as Exhibit A to the Declaration of Gordon C. Atkinson in Support of Defendants' Motion for Judgment on the Pleadings.[2]  As a comparison between the Complaint

---

[2] Defendants respectfully request that the Court take judicial notice of the contents of the *Vanguard* complaint under Federal Rule of Evidence 201(b)(2) as a fact "not subject to reasonable dispute" because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *See Mangiafico v. Blumenthal*, 471

herein and the *Vanguard* complaint shows, there is no meaningful factual distinction between the two cases, and this Court should simply follow the precedent that the *Vanguard* decision provides.

In the *Vanguard* case, the Court found that "[p]roximate causation is lacking . . . because the shareholders were injured not by the ownership of or investment in the illegal gambling operations, but by the reaction of the stock price to the publicity following the government's investigation of those operations."  2009 WL 875220 at *3.  Citing to and quoting from the Second Circuit's decision in *In re American Express Co. Shareholder Litigation*, 39 F.3d 395, 400 (2d Cir. 1994), the Court found that "'[t]he commission of the RICO violations was not what injured plaintiffs,'" but rather, "as they acknowledge, 'it was the exposure of those acts,' through the government's investigation, as illegal that 'caused the plaintiffs' harm.'"  2009 WL 875220 at *3.

Like the *Vanguard* case, Plaintiff has not shown (and cannot show) proximate causation here.  Plaintiff's allegations of loss are that the Fund's investments suffered "significant losses following a law enforcement crackdown in the summer of 2006."  (Complaint ¶¶ 1, 64.)  These allegations are indistinguishable from the *Vanguard* complaint.  (Atkinson Decl., Ex. A, at ¶¶ 1, 51.)  As the Court so aptly stressed in Vanguard, "[p]roximate causation . . . does not exist where the plaintiff's injury was 'indirectly (and hence not proximately) caused by the racketeering activity'"  *Vanguard*, 2009 WL 875220 at * 2 (citing *Baisch v. Gallina*, 346 F.3d 366, 373 (2d Cir. 2003).)  The Court continued: "[i]njuries occurring because of the disclosure of a scheme involving the predicate acts, rather than because of the predicate acts themselves, are not the 'necessary result' of the predicate acts, and do not give rise to RICO standing."  *Id*.  (citing *In re*

F.3d 391, 398 (2d Cir. 2006) (trial court can take judicial notice of docket sheets as public records).

*Am. Express*, 39 F.3d at 400).  Thus, an injury created by the disclosure of a scheme or, similarly, by intervening actions such as a government investigation of a scheme, cannot give rise to RICO standing.  *Vanguard*, 2009 WL 875220 at *3.

Applying *Vanguard* to the factually indistinguishable case at hand[3] compels the same result.  Plaintiff's alleged loss was caused not by Defendants' alleged racketeering activity (investing in gambling enterprises), but by the government's investigation of off-shore gambling companies.  The public disclosure of the government investigation caused the alleged loss and thus there is no causal link sufficient to constitute proximate cause.

Plaintiff also fails to establish proximate cause because her allegations make it clear that she was not the target or victim of the alleged RICO violation, but a beneficiary.  In applying the RICO proximate cause analysis, the Second Circuit has "repeatedly emphasized that the reasonably foreseeable victims of RICO violation are the targets, competitors and intended victims of the racketeering enterprise."  *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 124 (2d Cir. 2003).  Here, the alleged racketeering activity is the investment in "illegal gambling businesses." But those who operate, control, direct, or own illegal gambling operations are expected *beneficiaries*, not victims of the alleged predicate acts, because their shares in the Fund would increase in value if the gambling business were successful.  *See Vanguard*, 2009 WL 875220 at *3 (citing *American Express*, 39 F.3d at 400 n.3).  As this Court held in *Vanguard*, "Plaintiffs, as those providing economic backing for the gambling investments, were not the intended victims

---

[3] Defendants were surprised to see that Plaintiff—having agreed during a telephonic conference that the *Vanguard* decision (in which leave to amend was denied) already controlled the instant action and having requested leave to amend her complaint solely based on the need to plead diversity—in fact amended her complaint to try to "beef up" her insufficient RICO pleadings. Although Defendants did not expect to have to file a motion addressing the RICO claims given the discussions with the Court (*see* Order dated 4/28/09) and given the *Vanguard* ruling, Defendants move on these grounds nonetheless to ensure a complete record.  Defendants do not, however, in any way concede that the amendments made by Plaintiff were procedurally proper or that they are of any legal consequence with respect to the ultimate result: the RICO allegations (even if the amendments are allowed) remain insufficient as a matter of law.

or targets of this enterprise." *Id.*  Again, applying *Vanguard* to the factually indistinguishable case at hand, Plaintiff cannot establish proximate causation or standing.

Plaintiff's new allegations in her amended pleading regarding the prior public disclosures by the press and in PartyGaming's SEC filings of the claimed illegality of off-shore gambling only strengthens, rather than weakens, the principles underlying this Court's *Vanguard* decision, making that decision even more compelling here than in *Vanguard* itself.  If it was *already* common knowledge among the general public at the time of the Fund's investment that PartyGaming's activities were potentially illegal, then it cannot be the alleged illegality of those operations that caused the stock price to drop—it was the enforcement activities related thereto. These new allegations thus forcefully drive home the clear application to this case of the Court's *Vanguard* conclusion that "shareholders were injured not by the ownership of or investment in the illegal gambling operations, but by the reaction of the stock price to the publicity following the government's investigation of those operations."  2009 WL 875220 at *3.

Consequently, as a result of the lack of proper allegations of proximate cause in this action, Plaintiff lacks RICO standing, and Plaintiff's RICO claims must be dismissed for failure to state a claim.  *See In re Am. Express*, 39 F.3d at 400; *Vanguard*, 2009 WL 875220 at *3.[4]

## B.    Plaintiff Fails to Plead a Predicate Act Under RICO

Even if she had standing to bring RICO claims, Plaintiff fails adequately to allege that the Fund's purchase of shares in PartyGaming constitutes a predicate act under RICO.  The sole predicate act alleged is found at 18 U.S.C. § 1955, which imposes criminal liability on anyone who "conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling

---

[4] As discussed more fully below, *see infra,* § IV(B)(2), although the standard for common law proximate cause may be different in some respects from that under RICO, the same general analysis applies to the common law claims, and those claims should also be dismissed for failure to plead proximate cause.

business."  Plaintiff can cite no authority for her claim that the mere purchase of publicly traded stock can be a violation of Section 1955 (Complaint ¶ 33), nor has research revealed any such case.  In short, there is simply no authority to support Plaintiff's assertion that buying publicly traded shares constitutes conducting, financing, managing, supervising, directing or owning a gambling enterprise.

Plaintiff's theory also flies in the face of common sense.  The first five activities prohibited under Section 1955 (from "conducting" to "directing") require *active involvement*, which is not even suggested here.  Nor is the sixth prohibited activity of "ownership" supported by the pleadings.  To bring Plaintiff's allegations within the scope of Section 1955, the Court would have to read the operative language of the statute expansively and past the point of coherence: the Court would have to find that anyone who purchases even one share of a publicly traded gaming company is criminally responsible under federal law for "owning" an illegal gambling business.  Such a reading, if adopted, would subject untold thousands of individuals to possible criminal prosecution under RICO.  Such an interpretation flies in the face of the spirit of the case law and Section 1955's legislative history.[5]

No court has read Section 1955 to impose liability on a shareholder in a public company (such as PartyGaming) who has no involvement in the company other than mere ownership of shares, and this Court should not be the first to do so.  Imposing criminal liability on any investor who purchases even one share in a company whose business includes online gambling is absurd.

---

[5] Congress intended that Section 1955 reach "only those persons who prey systematically upon our citizens and whose syndicated operations are so continuous and so substantial as to be of national concern" and are of "considerably greater magnitude than simply meet[ing] the [minimum] definitions."  H.R. Rep. No. 91-1549, § 802 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4007, 4029.  Courts have consistently found that Section 1955 should be read narrowly.  *See, e.g., United States v. Bridges*, 493 F.2d 918, 922 (5th Cir. 1974) ("To construe these provisions as urged by the government would not further the congressional purpose, for such a broad construction could subject almost any small gambling operation to federal regulation.  This is clearly not the function of § 1955.").

Accordingly, because Plaintiff cannot allege a predicate act, and because the proximate cause
and predicate act requirements apply equally to claims under both Section 1962(c) and 1962(d),[6]
all of her RICO claims should be dismissed.

### C.   Plaintiff Fails to Allege a "Pattern of Racketeering Activity"

Plaintiff's RICO claims must also be dismissed for failure to allege a "pattern of
racketeering activity" as required by RICO.  Under Section 1962(c)—and by extension any
alleged Section 1962(d) conspiracy to violate Section 1962(c)—a plaintiff must establish a
"pattern of racketeering activity."  *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d
178, 183 (2d Cir. 2008).  While the definitional section of RICO requires only allegations of two
acts of racketeering activity within 10 years of each other, *see* 18 U.S.C. § 1961(5), this
requirement only states the minimum necessary for the existence of a "pattern."  *See H.J. Inc. v.
Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989) (Section 1961(5) "does not so much define a pattern
of racketeering activity as state a minimum necessary condition for the existence of such a
pattern").  Instead, in addition to the requirements specified by Section 1961(5), "[t]o establish a
RICO pattern it must also be shown that the predicates themselves amount to, or that they
otherwise constitute a threat of, *continuing* racketeering activity."  *Id.* at 240.  Continuity can be
established by showing either *closed-ended continuity* (*i.e.*, a sufficiently long period of past
conduct) or *open-ended continuity* (*i.e.*, a threat of future repetition).  *Id.* at 241.

Plaintiff fails to establish a "pattern of racketeering activity" for two distinct reasons.
First, Plaintiff has in essence only alleged a single allegedly illegal activity: ownership of the
stock of PartyGaming.  While she has alleged numerous *purchases* of PartyGaming stock, it is

---

[6]  *See Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996) ("Since we have held that
the prior claims do not state a cause of action for substantive violations of RICO, the present
claim does not set forth a conspiracy to commit such violations."), *vacated on other grounds*,
525 U.S. 128 (1998).

not the "purchase" of stock that is allegedly illegal under Section 1955, but rather the "own[ership]" of an illegal gambling business.  Put another way, Plaintiff has not alleged repeated predicate acts that would establish a "pattern," but rather has merely alleged repeated acts to carry out the same allegedly criminal activity, namely Defendants' ownership of PartyGaming stock.  *See Anisfeld v. Cantor Fitzgerald & Co.*, 631 F. Supp. 1461, 1467 (S.D.N.Y. 1986) ("[A] pattern requires 'repeated criminal *activity*, not merely repeated *acts* to carry out the *same* criminal activity.'") (citation omitted).

Second, Plaintiff has not established the necessary "continuity" element to establish a pattern.  Plaintiff has not pled any acts that would constitute open-ended continuity.  She has not alleged any continuing illegal conduct and has instead specifically alleged that ACMF sold all of its shares in PartyGaming in July 2006 (Complaint ¶ 53), and she includes no allegations concerning or suggesting a threat of future illegal conduct.

Plaintiff also has not established (and cannot establish) closed-ended continuity.  Instead she alleges only that ACMF purchased shares in PartyGaming in June 2005 to January 2006— *i.e.*, over an eight-month long period.  (Complaint ¶ 37.)  But the Second Circuit has held that as a general rule, closed-ended continuity requires at least two years of activity.  *Spool*, 520 F.3d at 184 ("[a]lthough we have not viewed two years as a bright-line requirement, it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity, particularly where . . . '[t]he activities alleged involved only a handful of participants' and do not involve a 'complex, multi-faceted conspiracy.'") (citation omitted); *see also H.J.*, 492 U.S. at 242 ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the continuity] requirement.  Congress was concerned in RICO with longterm criminal conduct").  In *Spool*, for example, the court held that a "sixteen-month period

of time is insufficient to establish closed-ended continuity—particularly in the absence of separate schemes or large numbers of participants and victims." 520 F.3d at 184. Plaintiff has alleged only an eight-month long pattern and has alleged neither separate schemes nor large numbers of participants or victims. This Court should follow the Second Circuit's holding in *Spool* and decline to find sufficient allegations of continuity.

### III. GROUNDS FOR DISMISSAL OF RICO CLAIMS AND COMMON LAW CLAIMS

#### A. All of Plaintiff's Direct Claims Should Be Dismissed Because any Alleged Injury Is Derivative, Not Direct

##### 1. Direct RICO Claims Should Be Dismissed

Even where an alleged RICO violation causes some cognizable RICO injury, if the injury is to the value of an entity's shares, the claim generally belongs to the entity, and it may only be asserted derivatively on its behalf: "[a] shareholder generally does not have standing to bring an individual action under RICO to redress injuries to the corporation in which he owns stock." *Manson v. Stacescu*, 11 F.3d 1127, 1131 (2d Cir. 1993). Where shareholders bring a RICO claim alleging a "decrease in value of [their] shares," the "legal injury, if any, [is] to the firm." *Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir. 1986). The shareholder's injury is "derivative" and "not related directly to the defendant's injurious conduct." *Manson*, 11 F.3d at 1131.

In *Lakonia Management Ltd. v. Meriwether*, 106 F. Supp. 2d 540, 552 (S.D.N.Y. 2000), the court dismissed direct RICO claims of shareholders because "there [wa]s no allegation that plaintiff was treated differently than any other shareholder." Rather, the court found that "[a] shareholder generally does not have standing to bring an individual action under RICO to redress injuries to the corporation in which he owns stock." 106 F. Supp. 2d at 550 (quotation and citation omitted). *See Rand*, 794 F.2d at 849. Similarly, because the RICO claims here are

derivative in nature and thus belong to the Fund, the direct RICO claims asserted in Counts I and II must be dismissed.

### 2. Direct Common Law Claims Should Be Dismissed

Plaintiff's direct state law claims similarly fail because any such claims are derivative in nature. Under both Maryland and Delaware law, whether a claim is direct or derivative depends "solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004) (emphasis in original). [7] If the harm is to the corporation and the recovery would go to the corporation, the claim is derivative. *Id*. To pursue a direct action, plaintiffs must demonstrate that shareholders suffered an injury "'independent of any injury to the corporation." *Id*. at 1038, 1036 (holding that to bring direct action, plaintiff must be able to "prevail without showing an injury to the corporation") (citations omitted).

With respect to the first prong of *Tooley*, Plaintiff alleges direct injury only to the Fund: a decline in the Fund's value caused by a decline in value of its investments in gambling companies.[8] Shareholders are allegedly harmed only by virtue of and in proportion to their

---

[7] Under the internal affairs doctrine, Maryland law applies because ACMF is a Maryland corporation (Complaint ¶ 14). *See In re BP p.l.c. Derivative Litig.*, 507 F. Supp. 2d 302, 307-309 (S.D.N.Y. 2007) ("[The internal affairs] doctrine provides that the rights of a shareholder in a foreign company (including the right to sue derivatively) are determined by the law of the place where the company is incorporated."). Although Maryland courts have yet to articulate clearly what test should be applied to determine whether a shareholder claim is direct or derivative, Maryland courts have looked to Delaware law, including *Tooley*, as instructive. *See, e.g., Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.*, No. Civ. RDB 05-841, 2005 WL 2989343 at *4 (D. Md. Nov. 3, 2005)

[8] Although Plaintiff pleads "special injuries not belonging to ACMF" (Complaint ¶ 116), such use of special injury allegations as a tool to circumvent demand futility is frowned upon by the courts and does not convert a derivative claim into a direct one. *See Tooley*, 845 A.2d at 1035 (disapproving of "the use of the concept of 'special injury' as a tool in [the direct/derivative] analysis"); *In re Evergreen Mut. Funds Fee Litig.*, 423 F. Supp. 2d 249, 261 (S.D.N.Y. 2006) (holding that allegations of paying improper distribution and management fees do not transform a derivative claim into a direct claim).

ownership share.  Because Plaintiff cannot prevail *without* showing an injury to the Fund, the injury is not "independent of any alleged injury to the corporation" and the claims are therefore derivative.  *Tooley*, 845 A.2d at 1039.

Courts uniformly reach this conclusion where, as here, the injury alleged is a decrease in the value of shares held by shareholder-plaintiffs: "courts have long recognized that actions charging '[m]ismanagement which depress[es] the value of stock [allege] a wrong to the corporation; i.e., the stockholders collectively, to be enforced by a derivative action." *Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 353 (Del. 1988) (citing *Bokat v. Getty Oil Co.*, 262 A.2d 246, 249 (Del. 1970)).  For example, in *Hogan v. Baker*, No. Civ. A. 305CV0073P, 2005 WL 1949476, at *4 (N.D. Tex. Aug. 12, 2005), investors directly sued the advisors of seventy Delaware mutual funds on the theory that plaintiffs were injured directly because mutual funds "immediately" pass all gains and losses on to investors.  The court soundly rejected this argument because "if the only injury to an investor is the indirect harm which consists of the diminution in the value of his or her shares, the suit must be derivative." *Id.*

Furthermore, Plaintiff here concedes that all of the Fund's shareholders "were injured . . . in exactly the same way" as a result of their investment.  (Complaint ¶ 97(c).)  That concession is dispositive.  The "fact that an injury to the corporation tends to diminish each share of stock equally because corporate assets or their value are diminished" indicates an "indirect injury," not "independent or direct harm to the stockholders, individually." *Tooley*, 845 A.2d at 1037.

The claims here also fail the second prong of the *Tooley* test, which asks "who would receive the benefit of any recovery or other remedy."  845 A.2d at 1033.  Any recovery or relief here would properly flow to the Fund and not to the Fund's shareholders directly.  This conclusion is consistent with the analysis under *Tooley's* first prong because, under that analysis,

the alleged misconduct is a wrong to the Fund.  *See Kramer*, 546 A.2d at 353.  The alleged

misconduct therefore "never resulted in an event or transaction that could have injured the

stockholders directly, rather than indirectly as a result of their ownership of . . . shares," and "any

monetary recovery . . . would properly belong to the corporation [here, the Fund], rather than to

the stockholders personally."  *Dieterich v. Harrer*, 857 A.2d 1017, 1028 (Del. Ch. 2004).

    **B.**    **All of Plaintiff's Derivative Claims—both RICO and State Law Claims— Should Be Dismissed Because they Fail to Plead Demand Futility**

Under both Maryland law and Federal Rule of Civil Procedure 23.1, a complaint in a

derivative action must "allege with particularity the efforts, if any, made by plaintiff" to make a

demand on the entity for whom it wishes to sue.  *Werbowsky v. Collomb*, 766 A.2d 123, 134

(Md. Ct. App. 2001) (citing Fed. R. Civ. Proc. 23.1); *see also Aronson v. Lewis*, 473 A.2d 805,

808 (Del. 1984).  The purpose of the demand requirement is to afford directors an opportunity to

exercise their reasonable business judgment and "waive a legal right vested in the corporation in

the belief that its best interests will be promoted by not insisting on such right."  *Kamen v.*

*Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991) (citation omitted).  Only when demand is

excused can a shareholder initiate suit on behalf of the corporation.  *Id*.

Demand will only be excused in situations where it would be futile.  Maryland regards

demand futility as a:

> very limited exception, to be applied only when the allegations or
> evidence clearly demonstrate, in a very particular manner, either
> that (1) a demand, or a delay in awaiting a response to a demand,
> would cause irreparable harm to the corporation, or (2) a majority
> of the directors are so personally and directly conflicted or
> committed to the decision in dispute that they cannot reasonably be
> expected to respond to a demand in good faith and within the ambit
> of the business judgment rule.

*Werbowsky*, 766 A.2d at 144 (articulating Maryland's common law demand futility standard).

As the Fund and Independent Directors argue in greater detail, Plaintiff has failed to allege any

fact that would support a conclusion that the Fund directors cannot reasonably consider a demand (Fund and Ind. Directors' Mot. at 7-12), an argument that Defendants fully and specifically incorporate by reference herein.

Plaintiff does not allege that a demand or delay in awaiting a response to a demand would cause irreparable harm to the corporation. Instead, Plaintiff's claim of demand futility here focuses on Defendants' supposed conflicts of interest. Specifically, Plaintiff alleges, without sufficient factual allegation or support, that: (a) the entire board of directors of the Fund has an inherent conflict in determining whether to make a demand against other Defendants because each board member has fiduciary duties to the investors in the Fund as well as to the investors in the other funds that constitute ACMF; and (b) a majority of the board of directors has a disabling interest because they are exposed to a substantial likelihood of criminal and civil liability. (Complaint ¶¶ 81, 82.)

These arguments are conclusory at best (*i.e.*, "the directors are guilty, because we say so, and they are conflicted because they are guilty"), and courts have repeatedly rejected these purported excuses as grossly insufficient. As the court in *Werbowsky* held:

> [w]e . . . are not willing to excuse the failure to make demand . . . on the basis of generalized or speculative allegations that [the board members] are conflicted or are controlled by other conflicted persons . . . . The demand requirement *is* important. Directors are presumed to act properly and in the best interest of the corporation. They enjoy the benefit and protection of the business judgment rule, and their control of corporate affairs should not be impinged based on non-specific or speculative allegations of wrongdoing.

*Werbowsky*, 766 A.2d at 143-144; *see also Iqbal*, 129 S. Ct. at 1937 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (citations omitted).

Plaintiff's allegations of demand futility fail the stringent Maryland test.[9]  *First*, demand is not excused based on the directors' fiduciary duties to other funds.  Plaintiff alleges that if they prevail in this litigation, "ACIM would be liable to forfeit an amount equal to three times all of the fees it has received on account of its management of the Fund's portfolio from the time that Defendants first caused ACMF to purchase shares in illegal gambling businesses.  In that event, ACIM would be unable to continue covering the operational expenses of the other funds that compose ACMF as well as funds to which the board of directors also have fiduciary duties." (Complaint ¶ 85.)  Notwithstanding the conclusory and unsupported non-factual basis for this claim, even if it were adequately pled, it would have no bearing on the non-RICO claims, as this prong of Plaintiff's claim of demand futility rests solely on Defendants' potential RICO liability and treble damages.  *See* 18 U.S.C. § 1964(c) (permitting recovery of threefold damages in civil RICO claims).  But, as discussed above, Plaintiff's RICO claims fail as a matter of law.  Because Plaintiff cannot maintain a RICO claim against Defendants, she certainly cannot rest her demand futility allegations on an alleged conflict of interest that arises solely out of that claim.

*Second*, demand is not excused by allegations about potential exposure to civil and criminal liability.  Delaware law[10] compels the result that Plaintiff's conclusory allegation that the Defendants face "a substantial likelihood of personal criminal or civil liability" do not make

---

[9] Plaintiff's allegations would also fail the more common, less stringent Delaware test for demand futility, which focuses on whether (1) the directors were disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.  *Aronson*, 473 A.2d at 814.

[10] Maryland courts have recognized that the demand futility standards articulated in *Werbowsky* are relatively recent and, as a result, there are few Maryland cases applying it.  Consequently, Maryland courts look to Delaware law for guidance because the Delaware standard is more permissive and will excuse demand where Maryland would not.  *See, e.g.*, *Sekuk Global Enters. Profit Sharing Plan v. Kevenides, et al.*, Nos. 24-C-03-007496, 24-C-03-007876, and 24-C-03-008010, 2004 WL 1982508 (Md. Cir. Ct. 2004); *see also Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 140 (2d Cir. 2004) (noting that Maryland law characterizes the futility exception as "a narrow one").  In other words, if demand futility allegations fail to meet the looser Delaware standards, those allegations would most certainly fail the stricter Maryland standards.

out a disabling self-interest.  (Complaint. ¶ 87).  *See Aronson*, 473 A.2d at 818 (noting that plaintiff's argument that "demand is excused because the directors otherwise would have to sue themselves" is a "bootstrap argument [that] has been made to and dismissed by other courts.  Its acceptance would effectively abrogate Rule 23.1 and weaken the managerial power of directors…. [A] bare claim of this sort raises no legally cognizable issue under Delaware corporate law.") (citations omitted).  For example, in *Seminaris v. Landa*, 662 A.2d 1350, 1355 (Del. Ch. 1995), the Delaware Chancery Court considered allegations that directors were interested because of a "threat of liability in . . . related federal lawsuits" and a "threat of criminal sanctions by the SEC."  The court held that such allegations do not establish interestedness because "the threat of liability in the related actions" does not have "a greater impact on the directors' discretion than the threat of liability in [the] derivative action."  *Id*.  Rather, allegations of potential liability in related actions are simply "a slightly altered version of the discredited refrain—'you can't expect directors to sue themselves.'"  *Id*.  (citation omitted).  Even where—unlike here—collateral actions have actually been filed, courts have still rejected assertions that potential liability in such actions renders a director interested.  *See*, e.*g., In re NYFIX, Inc. Derivative Litig.*, 567 F. Supp. 2d 306, 315 (D. Conn. 2008) (potential liability in parallel state court action insufficient to establish interestedness); *Rattner v. Bidzos*, No. Civ. A. 19700, 2003 WL 22284323, at *14 (Del. Ch. Sept. 30, 2003) (potential liability in securities class action lawsuits insufficient to establish interestedness).

Plaintiff has not nearly satisfied this standard for at least two reasons.  *First*, for the reasons articulated above, Plaintiff has not even come close to pleading valid RICO claims against *anyone*, much less the directors.  The notion of a conflict based on the directors' risk of personal liability is fatally weak on its face.  *Second*, and even more telling, is the fact that it has

been four years since the original investments at issue were made, and three years since the

grand jury indictments were handed down against the companies in which the Fund invested.

Yet Plaintiff has made no allegations concerning any prosecutions or civil lawsuits (other than

this action) filed or any known governmental investigations or inquiries commenced against any

of these Defendants based on such investments, and indeed, there have been no such

prosecutions, lawsuits or governmental investigations.  In other words, the threat of liability here

is simply trivial to non-existent and cannot even arguably form the basis of a proper demand

futility allegation.

**IV.     GROUNDS FOR DISMISSAL OF COMMON LAW CLAIMS**

### A.     Maryland Law Does Not Recognize an Independent Breach of Fiduciary Duty Claim

As an initial matter, Maryland does not recognize a standalone claim for breach of

fiduciary duty.  *See Vinogradova v. Suntrust Bank, Inc.*, 875 A.2d 222, 230-231 (Md. Ct. Spec.

App. 2005) ("Maryland does not recognize a separate tort action for breach of fiduciary duty.")

Accordingly, Plaintiff's breach of fiduciary duty claim is at best a restatement of her negligence

claim.

### B.     Negligence and Breach of Fiduciary Duty

Maryland law requires a plaintiff asserting a cause of action in negligence to allege that

(i) the defendant owed a duty to the plaintiff which required conformance to a certain standard,

(ii) the defendant breached the duty, (iii) the plaintiff suffered actual injury or loss, and (iv) the

loss or injury proximately resulted from the defendant's breach of duty.  *Shofer v. Stuart Hack*

*Co.*, 723 A.2d 481 (Md. Ct. Spec. App. 1999).  Plaintiff has failed to plead that (a) Defendants

breached any duty owed the shareholders and (b) Defendants' decision to invest in PartyGaming

proximately caused Plaintiff's harm.

**1.     Plaintiff Fails to Allege That Defendants Breached their Duties to Shareholders**

Under Maryland law, challenges to investment decisions by fiduciaries must be based on departures from explicit statutory standards.  *See Mona v. Mona Elec. Group, Inc.*, 934 A.2d 450 (Md. Ct. Spec. App. 2007) (citing MD. CODE ANN., CORPS. & ASS'NS ("MD Corp. Code") § 2-405.1(a)).  The standard of care a director owes to the corporation in managing the affairs of the corporation requires that he or she act "(1) [i]n good faith; (2) [i]n a manner he or she reasonably believes to be in the best interests of the corporation; and (3) [w]ith the care that an ordinarily prudent person in a like position would use under similar circumstances.  MD Corp. Code § 2-405.1(a).  Under the business judgment rule, directors are presumed to have satisfied these standards.  MD Corp. Code § 2-405.1(e) (codifying business judgment rule); *Mona*, 934 A.2d at 464.  The burden is on the challenging party to establish facts rebutting this presumption.  *Mona*, 934 A.2d at 464; *Bender v. Schwartz*, 917 A.2d 142 (Md. Ct. Spec. App. 2007).  Thus, under Maryland law, a party must allege not only that the directors did not act with ordinary care *but also* that the directors did not act in good faith and in the best interests of the company.  *See Mona*, 934 A.2d at 464 ("[t]he business judgment rule in its present form in Maryland therefore dictates that a party challenging in court a director's decision not only introduce evidence that the director did not act with ordinary care under the circumstances but also that the director did not act in good faith and did not act in a manner he or she reasonably believed was in the best interests of the company.")

Furthermore, challenges to investment decisions are analyzed by examining what was known *at the time* about the investment, the overall portfolio, the beneficiary's purposes, and other circumstances bearing on whether decision departed from the standard of care.  *See* MD Corp. Code 2-405.1(a)(3) ("A director shall perform his duties as a director . . . [w]ith the care

that an ordinarily prudent person in a like position would use *under similar circumstances*.") (emphasis added); *Gay v. State of Md. Deposit Ins. Fund Corp.*, 521 A.2d 1205, 1213 (Md. Ct. App. 1987) ("Whether a corporate fiduciary has breached the duty of loyalty to the corporation in a transaction with it is ordinarily determined as of the time of the transaction, and not by hindsight"); *see also Law v. Law*, 753 A.2d 443, 449 (Del. 2000) (noting that propriety of investment decision must be determined at the time of investment and in light of the performance of the portfolio as a whole).  Pleadings that omit these allegations must be dismissed.  *See Lopez v. Lopez*, 243 A.2d 588, 594 (Md. 1968) ("A beneficiary seeking to obtain relief for a breach of trust must plead and prove facts which show the existence of a trust duty, the failure of the trustee to perform it and that consequently the court should grant the requested remedy.")

     None of the state law claims satisfies these standards.  As an initial and dispositive matter, the Complaint fails to allege that Defendants acted in bad faith in their decision to invest in the alleged illegal gambling companies.  Nor does the Complaint allege that Defendants acted with the intent to harm the company or that Defendants were self-interested in any way.  Thus, Defendants are entitled to the protections of the business judgment rule, and Plaintiff's claims of breach of fiduciary duty and negligence fail.

     Furthermore, the Complaint says nothing about whether Defendants knew that the investments might prove too risky *in light of the Funds' other holdings*.  It references no reason for any defendant to have foreseen a decline in overall Fund valuation due to any potential government "crackdown" or prospect of price declines "in or about 2006."[11]  Even if some risk

---

[11] Plaintiff attempts to bolster its claims by including allegations of publicly available information regarding the potential illegality of online gambling websites.  However, where the markets for publicly-traded stocks are "efficient," publicly available information is incorporated into stock prices.  *See Basic, Inc. v. Levinson*, 485 U.S. 224, 245-47 (1988).  Thus, any known risks associated with the investment were already reflected in the stock price at the time of

to the individual stock in question had been known, the Complaint fails to plead that the risk was imprudent, or inconsistent with Fund objectives, in light of the Fund's overall portfolio.  Indeed, the Complaint says nothing about the Fund's overall portfolios or its investment objectives.

These failures are especially significant here.  Even now, nothing in the Complaint suggests that the decline in stock price of any gambling business had a material impact on the value of Fund shares.  Under Maryland law, fiduciaries cannot be liable based on allegations made only in hindsight, or based on the alleged underperformance of one investment out of a portfolio that met overall investment objectives.  *See Gay*, 521 A.2d at 1213.

### 2.    Plaintiff Fails to Plead Proximate Cause

To establish causation for Plaintiff's state law claims, Plaintiff must establish (i) cause-in-fact ("factual causation"); and (ii) legally cognizable cause ("legal causation" or "proximate causation").  *See Peterson v. Underwood*, 264 A.2d 851, 855 (Md. Ct. App. 1970).  Mere factual causation focuses upon whether the defendant's conduct was an actual cause of the plaintiff's alleged damages, and courts generally apply a "but-for" test, which looks at whether "an injury might not have occurred 'but-for' an antecedent act of the defendant." *Id*.

To show legal (or proximate) causation, on the other hand, a plaintiff must demonstrate that there is a continuous chain of causation between defendant's alleged breach and plaintiff's alleged damages.  *See Collins v. Luper*, 277 A.2d 445, 448 (Md. Ct. Spec. App. 1971) (defendant's negligent act must "continuously extend through every event, fact, act, and occurrence related to the tortious conduct of the defendant and [be] itself the logical and natural cause of the plaintiff's injury").  Thus, proximate cause does not exist where a new and independent act breaks the causal connection between the original tortious conduct and the

investment.  If the "crackdown" and ensuing fall in gambling stock prices had been foreseeable prior to their occurrence, gambling stock prices would have already reflected them.

injury.  *See Sindler v. Litman*, 887 A.2d 97, 115 (Md. Ct. Spec. App. 2005) ("The chain of

causation may be broken by an intervening force (negligent or non-negligent) that may, in turn,

become a superseding cause, in which case the original tortfeasor's liability will terminate.").

As the Court recognized in *Vanguard*, Plaintiff's alleged injury was not proximately

caused by Defendants' decision to invest in PartyGaming, but rather was directly caused by the

government crackdown, which caused share prices to drop.  *Vanguard*, 2009 WL 875220 at *3

("The direct cause of plaintiffs' injuries is therefore a 'set of actions [the government crackdown]

entirely distinct from the alleged RICO violation [conducting an illegal gambling operation].'")

(citation omitted).  Since both common law and civil RICO claims require a showing that

defendant's acts directly injured plaintiff, the *Vanguard* analysis applies to Plaintiff's common

law claims here.  *See Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d

229, 238-39, 243 (2d Cir. 1999) (holding that plaintiffs' alleged injuries on RICO claims are

indirect and that "analogous principles to those that doomed plaintiffs' RICO causes of action

also bar plaintiffs' common law fraud and special duty actions"); *Lerner v. Fleet Bank, N.A.*, 459

F.3d 273, 285 n.6 (2d Cir. 2006) (noting that even though RICO's proximate cause test is in

some ways more stringent than that at common law, where there is no direct link between

defendant's actions and plaintiff's alleged injury, a proximate cause analysis is "equally

applicable to both the federal [RICO] and state causes of action").

Put another way, the government's actions constitute a superseding, intervening act that

breaks the causal chain for the proximate cause.  Therefore, even if Defendants' actions

arguably could be a "but-for" cause of the alleged injury—in the sense that without the purchase

of shares in PartyGaming there would be no injury to Plaintiff—such actions were not the

proximate cause of Plaintiff's alleged injury.  Based on the Court's analysis in *Vanguard*,

therefore, just as Plaintiff cannot establish proximate cause under RICO, she cannot establish proximate cause for her state law claims.

### C.      Waste

Corporate waste takes place when "what the corporation has received is so inadequate in value that no person of ordinary, sound business judgment would deem it worth that which the corporation has paid." *Werbowsky*, 766 A.2d at 132 (citation omitted).  In other words, waste requires "an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade." *White v. Panic*, 783 A.2d 543, 554 (Del. 2001) (citation omitted).[12]  A plaintiff must therefore plead that the Defendants "irrationally squander[ed] corporate assets—for example, where the challenged transaction served no corporate purpose or where the corporation received no consideration at all." *Id*. (quotation and citation omitted); *see also Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000) (waste is "an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration") (citation omitted).  Consequently, corporate waste claims trigger "an extreme test, very rarely satisfied by a shareholder plaintiff." *Steiner v. Meyerson*, Civ. A. No. 13139, 1995 WL 441999, at *1 (Del. Ch. July 19, 1995).

Plaintiff's waste claim fails for lack of these necessary allegations.  The Complaint does not allege that the Fund "received no consideration at all" for its investment, *White*, 783 A.2d at 554, or even that it paid too much.  The Complaint does not say how much the Fund paid for the stocks at issue, or whether those stocks ever became worthless to the Fund.  Nor can Plaintiff argue that the stocks had no value at the time of the investment; they were publicly traded and

---

[12] For the law of corporate waste, Maryland looks approvingly to Delaware law.  *See, e.g.*, *Werbowsky*, 766 A.2d at 139.

presumably had the exact value that the Fund paid for them at the time of that trade.  If this sort

of pleading sufficed, every allegedly unprofitable expenditure—indeed any failed investment—

could be challenged as a "waste" simply by the application of 20/20 hindsight.

## Conclusion

For the reasons stated above, Plaintiff has failed to state a claim, and Defendants

respectfully submit that the Complaint should therefore be dismissed with prejudice and without

leave to amend.

Dated: July 2, 2009                              Respectfully submitted,

                                                 COOLEY GODWARD KRONISH LLP
                                                 GORDON C. ATKINSON (GA-8337)
                                                 BENJAMIN KLEINE (BK-1975)


                                                 By:   /s/ Gordon C. Atkinson
                                                       Gordon C. Atkinson (GA-8337)

                                                 1114 Avenue of the Americas
                                                 New York, NY  10036-7798
                                                 Telephone:  (212) 479-6000
                                                 Facsimile:   (212) 479-6275
                                                 E-mail:      atkinsongc@cooley.com
                                                              bkleine@cooley.com

                                                 Attorneys for Defendants
                                                 American Century Companies, Inc.,
                                                 American Century Investment Management,
                                                 Inc., James E. Stowers, Jr., James E.
                                                 Stowers, III, Jonathan S. Thomas, William
                                                 M. Lyons, Mark Mallon, Wade Slome,
                                                 Bruce Wimberly, and Jerry Sullivan