LAURA SEIDL, individually, derivatively and on
behalf of all others similarly situated,

                    Plaintiff,

   vs.

AMERICAN CENTURY COMPANIES, INC., AMERICAN
CENTURY INVESTMENT MANAGEMENT, INC., JAMES E.
STOWERS, JR., JAMES E. STOWERS, III, JONATHAN S.
THOMAS, THOMAS A. BROWN, ANDREA C. HALL,
DONALD H. PRATT, GALE A. SAYERS, M. JEANNINE
STRANDJORD, TIMOTHY S. WEBSTER, WILLIAM M.
LYONS, MARK MALLON, WADE SLOME, BRUCE
WIMBERLY and JERRY SULLIVAN,

                    Defendants.

      and

AMERICAN CENTURY MUTUAL FUNDS, INC., doing
business as AMERICAN CENTURY ULTRA FUND,

               Nominal Defendant.

INDEX No. 08-CV-8857 (DLC)
ECF Case

## FUND AND INDEPENDENT DIRECTORS' REPLY MEMORANDUM
## OF LAW IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

## **TABLE OF CONTENTS**

Page

ARGUMENT....................................................................................................................1

A.  The Amended Complaint's Speculative and Conclusory Allegations Fail
to State a Cause of Action Against the Independent Directors...............................1

1.  An Independent Director's Role as a "Watchdog" Does Not
Plausibly State a Claim for Relief Arising From Individual
Investment Decisions.................................................................................1

2.  The Introduction of Additional Evidence, Even if Proper, Fails to
Sufficiently Allege Facts to Support Any Claim Against the
Independent Directors................................................................................4

3.  The Group Pleading Doctrine Does Not Apply...........................................5

B.  Plaintiff has Failed to Plead Futility of Demand with Sufficient
Particularity........................................................................................................6

1.  Plaintiff's Attempt to Distinguish this Case From Numerous
Decisions Rejecting Similar Futility Arguments is Unavailing...................6

2.  Maryland Law Does Not Recognize an Additional Exception for
Potential Liability.....................................................................................8

3.  The Independent Directors' Responsive Pleadings and Plaintiff's
Own Delay in Bringing Suit Do Not Excuse Demand ................................8

CONCLUSION...............................................................................................................10

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## CASES

*Adelphia Recovery Trust v. Bank of America, N.A.*, 624 F. Supp. 2d 294 (S.D.N.Y. 2009) ...........5

*Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009) ...................................................................5

*Burks v. Lasker*, 441 U.S. 471 (1979) ......................................................................2

*In re Ferro Corp. Deriv. Litig.*, 511 F.3d 611 (6th Cir. 2008) ........................................9

*Fink v. Weill*, No. 02-cv-10250, 2005 WL 2298224 (S.D.N.Y. Sept. 19, 2005) ...........................6

*In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451 (D.N.J. 2005) ....................................7

*Grossman v. Johnson*, 674 F.2d 115 (1st Cir. 1982) ........................................................9

*Lanza v. Drexel & Co.*, 479 F.2d 1277 (2d Cir. 1973) ........................................................3, 4

*In re Merrill Lynch Focus Twenty Fund Inv. Co. Act. Lit.*, 218 F.R.D. 377 (E.D.N.Y. 2003) ...................................................................................................7

*In re Mutual Fund Inv. Litig.*, 519 F. Supp. 2d 580 (D. Md. 2007) .................................................7

*Pollio v. MF Global, Ltd.*, 608 F. Supp. 2d 564 (S.D.N.Y. 2009) .........................................4

*Scalisi v. Fund Asset Mgmt*, 380 F.3d 133 (2d Cir. 2004) .............................................8

*Tannenbaum v. Zeller*, 552 F.2d 402 (2d Cir. 1977) .......................................................2

*Twombly*, 550 U.S. 544 (2007) ...............................................................................1, 5

*Weiss v. Temporary Inv. Fund*, 516 F. Supp. 665 (D. Del. 1981) ......................................9

*Werbowsky v. Collomb*, 766 A.2d 123 (Md. 2002) ...............................................6, 8, 9

## RULES & STATUTES

15 U.S.C. § 1955...........................................................................................8

Fed. R. Civ. P. 9(b) ......................................................................................3

Fed. R. Civ. P. 23.1(b)(3)...............................................................................6

Rule 8(a)(2).............................................................................................1, 4

Securities Exchange Act, Section 10(b)................................................................3

ii

**MISCELLANEOUS**

*Commission Guidance Regarding the Duties and Responsibilities of Investment Company Boards of Directors with Respect to Investment Adviser Portfolio Trading Practices, Proposed Rule*, Release Number 28345, 93 S.E.C. 2469 (July 30, 2008)......................................2

ABA, Fund Director's Guidebook 53 (3d ed. 2006) ................................................................2, 3

8627295.2

Defendants Thomas A. Brown, Andrea C. Hall, Donald H. Pratt, Gale E. Sayers, M. Jeannine Strandjord, and Timothy S. Webster (the "Independent Directors") and nominal defendant American Century Mutual Funds, Inc., doing business as American Century Ultra Fund ("Ultra Fund" and collectively, "Defendants"), respectfully submit this Reply Memorandum of Law in Support of Their Motion for Judgment on the Pleadings.  Defendants also join the other defendants' reply and incorporate by reference their arguments.  For the reasons presented in the motions and reply briefs, Defendants' Motion for Judgment on the Pleadings should be granted.

## **ARGUMENT**

### A.      The Amended Complaint's Speculative and Conclusory Allegations Fail to State a Cause of Action Against the Independent Directors

To state a claim for relief under the pleading requirements established by Rule 8(a)(2), "[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Twombly* 550 U.S. 544, 555 (2007) (citations omitted).  Plaintiff's Amended Complaint thus can survive a motion to dismiss for failure to state a claim only if it provides "allegations plausibly suggesting (not merely consistent with)" the Independent Directors' involvement in the alleged scheme to violate federal laws. *Id.* at 557.  As explained in Defendants' Motion, the Amended Complaint only provides conclusory statements and hypothetical circumstances and fails to set forth allegations that would make it plausible that the Independent Directors were directly involved in causing the purchase of PartyGaming shares.

#### 1.      An Independent Director's Role as a "Watchdog" Does Not Plausibly State a Claim for Relief Arising From Individual Investment Decisions

Plaintiff's central argument in opposing the Independent Directors' Motion – that their responsibilities as "watchdogs" provides plausible grounds for the court to infer their direct

involvement in the challenged investment decisions – is without merit.  Initially, Plaintiff

misstates the "watchdog" role of independent directors.  Independent directors act as

"watchdogs" to address conflicts of interest between the shareholders of the fund and fund

management, not to review each portfolio holding of every mutual fund on whose board they sit.

As explained in *Tannenbaum v. Zeller*, 552 F.2d 402 (2d Cir. 1977), directors have a "watchdog"

role because "there are important areas in which [management and shareholder] interests may

conflict."  *Id.* at 405.  The Supreme Court similarly explained that the "watchdog" role of

independent directors principally involves the oversight of conflicts of interest: "In short, the

structure and purpose of the [Investment Company Act] indicate that Congress entrusted to the

independent directors of investment companies, exercising the authority granted to them by state

law, the primary responsibility for looking after the interests of the funds' shareholders." *Burks*

*v. Lasker*, 441 U.S. 471, 484-85 (1979).

Neither does the SEC Release cited by Plaintiff support her interpretation of the

"watchdog" role.  Although her opposition implies that "monitor[ing] the adviser's trading

practices" contemplates mutual fund independent directors' direct involvement in selecting,

approving, or reviewing each portfolio security, the SEC Release explains that the "monitoring"

it describes is simply part of the independent directors' duties in "overseeing the use of fund

assets and in monitoring the conflicts of interest faced by a fund's investment adviser. . . ."

*Commission Guidance Regarding the Duties and Responsibilities of Investment Company*

*Boards of Directors with Respect to Investment Adviser Portfolio Trading Practices, Proposed*

*Rule*, Release No. 28345, 93 S.E.C. 2469 (July 30, 2008).  Stated otherwise, while directors are

responsible for monitoring the fund's investment performance, "fund directors are not expected

to play an active role in managing a fund's investments." ABA, Fund Director's Guidebook 53

2

(3d ed. 2006). Thus, the argument that an allegation of the Independent Directors' roles as "watchdogs" plausibly establishes that they were involved in the challenged investment decision is based upon a misstatement of the law and cannot establish a claim for relief.

As the Amended Complaint does not plausibly state a claim against the Independent Directors based on involvement in the purchase of PartyGaming shares, Plaintiff argues in the alternative that, given their role as "watchdogs" and based upon certain unspecified reports they received (discussed further below), the Independent Directors were reckless in not knowing about the investments, and so should be imputed with knowledge. Plaintiff's citation to *Lanza v. Drexel & Co.*, 479 F.2d 1277 (2d Cir. 1973) as support for her argument is unpersuasive. First, the Second Circuit considered only the liability of directors under Section 10(b) of the Securities Exchange Act, a claim sounding in fraud and applying a different standard of pleading. *See* Fed. R. Civ. P. 9(b). In addition, because *Lanza* considered the liability of directors in the context of disclosures, it provides no guidance with respect to the Independent Directors' alleged recklessness in reviewing or failing to review individual investment decisions. Finally, to the extent that any principles of director responsibility can be gleaned from the opinion, *Lanza* contradicts Plaintiff's central premise. For example, the Second Circuit stated:

> [N]either the language nor the intent of Section 10(b) or Rule 10b-5 would justify a holding (1) that a director is an insurer of the honesty of individual officers of the corporation in their negotiations which involve the purchase or sale of the corporation's stock or (2) that, although he does not conduct the negotiations, participate therein, or have knowledge thereof, he is under a duty to investigate each such transaction and to inquire as to what representations have been made, by whom and to whom, and then independently check on the truth or falsity of every statement made and document presented.

*Lanza*, 479 F.2d at 1281. Indeed, the SEC observed in the same case that "directors are not normally involved in the day-to-day conduct of the company's affairs. . . . Directors have a right

3

to rely on the officers of the corporation to perform their functions in a lawful manner." *Id.* at 1306 (citation omitted).

    2.      The Introduction of Additional Evidence, Even if Proper, Fails to Sufficiently Allege Facts to Support Any Claim Against the Independent Directors

Implicitly acknowledging that the allegations actually made in the Amended Complaint against the Independent Directors are insufficient to meet the pleading requirements of Rule 8(a)(2), Plaintiff seeks to rely on reference to a Fund Performance Review Committee in a Statement of Additional Information ("SAI") filed by ACMF with the Securities and Exchange Commission in October 2006. Pl. Ex. 17. However, Plaintiff's attempt to use the SAI is improper and cannot in any event salvage her claims.

Initially, Plaintiff is improperly attempting to amend her complaint through her opposition. When presented with a motion to dismiss, a court may only consider the pleadings, documents attached thereto, and other documents incorporated in the complaint by reference. *See, e.g.*, *Pollio v. MF Global, Ltd.*, 608 F. Supp. 2d 564, 568 n.1 (S.D.N.Y. 2009) ("'[P]arties cannot amend their pleadings through issues raised solely in their briefs,' and such facts are thus irrelevant for purposes of determining whether plaintiff's Complaint should be dismissed for failure to state a claim . . . .") (citation omitted).

The Amended Complaint includes no reference to the SAI, no reference to a Fund Performance Review Committee, and no allegations suggesting that the Independent Directors knew or should have known about the investments in PartyGaming through reports from the Ultra Fund's managers. Indeed, Plaintiff evidently did not "necessarily rely" on the SAI because at no point in the Amended Complaint does she distinguish between the Independent Directors and the other director defendants.

Even if Plaintiff is permitted to use the SAI to supplement her actual allegations, it does not make the allegations against the Independent Directors plausible. First, the SAI language cited by Plaintiff does not satisfy the *Twombly* and *Iqbal* pleading requirements. *See Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009). Plaintiff is merely speculating that the Independent Directors *might* have received reports providing sufficiently detailed information on every portfolio security of every fund on whose board they sat to support her conclusory allegation that the Independent Directors "knowingly developed and implemented (or conspired to develop and implement) an investment strategy" to purchase shares of PartyGaming. Am. Complaint ¶ 36. Second, given that the Performance Review Committee meets only four times a year and has responsibility over several portfolios (involving hundreds of portfolio securities), it is far from plausible that mere committee membership establishes knowledge and active involvement in the selection of specific portfolio securities by the Independent Directors.

3.    The Group Pleading Doctrine Does Not Apply

Plaintiff also argues that because "the claims involve facts solely within the defendants' knowledge, group pleading is allowed." Memo. in Opp. 37. However, Plaintiff cannot avail herself of any presumption permitted under the group pleading doctrine. In the Second Circuit, "[t]he group pleading doctrine is an exception to the requirement that the fraudulent acts of each defendant be identified separately in the complaint [and permits defendants to be] pled together where, prospectuses, registration statements, annual reports, press releases, or other group-published information, are the collective work of those individuals with direct involvement in the everyday business of the company." *Adelphia Recovery Trust v. Bank of America, N.A.*, 624 F. Supp. 2d 294, 316 (S.D.N.Y. 2009) (internal citations and quotation marks omitted). Here,

Plaintiff is not alleging securities fraud or any liability by the Independent Directors for any ACMF public statements; moreover, they are not involved in the everyday business of the Fund.

**B.      Plaintiff has Failed to Plead Futility of Demand with Sufficient Particularity**

Plaintiff's Amended Complaint, in addition to failing to state a claim against the Independent Directors, fails to "state with particularity ... the reasons for not obtaining the action or making [a demand on the directors]. Fed. R. Civ. P. 23.1(b)(3). Despite Plaintiff's assertion that "there is no basis to hold plaintiff to a higher standard in pleading futility than is applicable to any other element of her case," the plain language of Rule 23.1 imposes a higher pleading standard. *See, e.g., Fink v. Weill*, No. 02-cv-10250, 2005 WL 2298224, at *3 (S.D.N.Y. Sept. 19, 2005) ("Because Rule 23.1 requires that Plaintiff make particularized allegations, it imposes a pleading standard higher than the normal standard applicable to the analysis of a pleading challenged under Rule 12(b)(6).") (citation omitted).   Similarly, Maryland law requires "clear[] demonstrat[ion] in a very particular manner. . . ." *Werbowsky v. Collomb*, 766 A.2d 123, 144 (Md. 2002).  Plaintiff's Amended Complaint fails to meet this standard.

1. Plaintiff's Attempt to Distinguish this Case From Numerous Decisions Rejecting Similar Futility Arguments is Unavailing

Faced with a large body of case law rejecting futility arguments similar to those she makes, Plaintiff vainly seeks to distinguish these cases on the facts, asserting that they are "of an entirely different character than the typical allegations of director conflict that courts sometimes reject." Memo. in Opp. 41.  Plaintiff emphasizes "the specific structure of ACMF and its mutual funds," specifically that AMCF is a "series" mutual fund with several portfolios to which the director defendants owe fiduciary duties.  Plaintiff argues that the directors thus would not bring suit against the investment adviser for the portfolios because recovery for the Ultra Fund would harm the other portfolios by forcing ACIM to charge the other portfolios more.

6

Notwithstanding Plaintiff's attempts to disguise her futility arguments, Plaintiff's fundamental argument, that service on the boards of multiple funds managed by the same adviser disqualifies directors from considering a demand, has been rejected by numerous courts. For example, one court concluded that, where the shareholders of one particular mutual fund brought a derivative action against the investment adviser, and where the investment adviser managed 49 funds (which in turn controlled over 70 fund portfolios) on whose boards the directors sat, there was no conflict establishing futility of demand under Maryland law. *In re Merrill Lynch Focus Twenty Fund Inv. Co. Act. Litig.*, 218 F.R.D. 377, 380-81 (E.D.N.Y. 2003). Other cases applying Maryland law similarly have concluded that membership on multiple mutual fund boards does not excuse demand, even where the directors must bring suit against an investment adviser managing all of the funds. *See, e.g., In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451 (D.N.J. 2005).

Plaintiff's attempt to distinguish these cases because the Ultra Fund is a series fund is without merit. As one court explained, "the SEC… has expressly pronounced that [where a series mutual fund is involved] each series is to be treated as a separate investment company." *In re Mutual Fund Inv. Litig.*, 519 F. Supp. 2d 580, 588 (D. Md. 2007) (citations omitted). As Plaintiff states in her opposition, the series portfolios are different funds with significantly different portfolio securities. Memo. in Opp. at 40. Therefore, there is no reason to distinguish this case from any other in which demand was required. Plaintiff's argument would disqualify every director of a mutual fund where such director has a fiduciary responsibility to another fund managed by, or receiving services from, the targeted investment adviser. This argument clearly conflicts with the purpose of the demand requirement, and should be rejected.

8627295.2

2.   Maryland Law Does Not Recognize an Additional Exception for Potential
Liability

Plaintiff seeks to expand the *Werbowsky* test by adding an exception for potential

liability—an exception discussed in Delaware case law but not Maryland case law.  No case

applying Maryland's test has interpreted the *Werbowsky* test to include this additional exception,

because "the futility exception is a narrow one."  *Scalisi v. Fund Asset Mgmt*, 380 F.3d 133, 140

(2d Cir. 2004).  As the Second Circuit stated, *Werbowsky* "emphasized the significant value of

pre-suit demand in allowing 'directors—even interested, non-independent directors—an

opportunity to consider, or reconsider, the issue in dispute. . . .'"  *Id.* at 141.  Permitting directors

(including those who had some involvement in the challenged decision) to re-consider a

challenged decision is contrary to the argument that potential liability excuses demand.

Even if potential liability were a recognized exception to the demand requirement,

Plaintiff's assertion that the prosecution of the CEOs and directors of gambling businesses

suggests potential criminal liability for directors of a mutual fund that purchased publicly traded

shares of one such company finds no support.  Plaintiff has not cited any case, or even any news

article, suggesting that any person or entity has been, or will be, charged with violating 15 U.S.C.

§ 1955 for purchasing shares in a gambling business found to be illegal.  Moreover, Plaintiff's

argument that demand is excused because of alleged potential liability fails for the further reason

that each of Plaintiff's claims fails as a matter of law, as demonstrated elsewhere in defendants'

briefing.

3.   The Independent Directors' Responsive Pleadings and Plaintiff's Own Delay in
Bringing Suit Do Not Excuse Demand

In her opposition, Plaintiff argues (a) the fact that the Independent Directors have

answered the charges of liability she leveled against them shows that they have now "made up

their minds" as to the claims in the Amended Complaint such that pre-suit demand would have been futile, and (b) demand should be excused on the alternative ground that, although Plaintiff acknowledges (and indeed makes arguments based on) the fact that she delayed almost three years in bringing this action, Memo. in Opp. 48, ACMF will purportedly somehow be irreparably harmed if she is now denied the ability to assert derivative claims.

First, Plaintiff's argument that unless all defendants agree with Plaintiff's allegations in a responsive pleading, they are *per se* "so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule," *Werbowsky*, 766 A.2d at 144, proves too much. Were this the law, any plaintiff could establish futility by simply asserting the liability of the directors and forcing them to defend themselves. Tellingly, Plaintiff cites no authority for this argument, and the case law is to the contrary. Demand futility must be established based on pre-suit facts. *See, e.g., Grossman v. Johnson*, 674 F.2d 115, 123 (1st Cir. 1982) ("The futility of making the demand required by Rule 23.1 must be gauged at the time the derivative action is commenced, not afterward with the benefit of hindsight.") (citation omitted). "After a suit is filed, the directors may take action in their defense that could be construed as contrary to the claims of the shareholders, but that might not have been taken if a suit had not been filed." *In re Ferro Corp. Deriv. Litig.*, 511 F.3d 611, 621 (6th Cir. 2008) (citation omitted). *See also Weiss v. Temporary Inv. Fund*, 516 F. Supp. 665, 673 (D. Del. 1981) ("[S]ince the directors of the Fund expressed their opposition to [plaintiff's suit by asserting that the allegations lack merit] only after it was filed, that is not a basis for excusing demand.").

Plaintiff's three year delay in filing suit does not, as she argues, support a finding of futility, Memo. in Opp. 48, but rather serves to underscore that Plaintiff had ample opportunity to

9

make demand prior to filing suit.  Moreover, her delay undermines the credibility of her

argument that irreparable harm will occur if her derivative claims are not allowed to proceed.

Nor can Plaintiff bootstrap an irreparable harm argument on the fact that, without first making

demand, she chose to bring a lawsuit that the Independent Directors are now forced to defend.

As discussed above, futility must be established as of the time the lawsuit is filed.  Plaintiff

cannot create futility by filing a lawsuit.

## CONCLUSION

For the reasons set forth above and in their initial memorandum in support of the Motion,

the Fund and the Independent Directors respectfully request that the Court grant their Motion for

Judgment on the Pleadings and dismiss Plaintiff's Amended Complaint with prejudice.

Dated:  September 18, 2009

/s/ David P. Langlois
David P. Langlois (DL 2319)
SUTHERLAND ASBILL & BRENNAN LLP
1114 Avenue of the Americas
40th Floor
New York, New York 10036-7703
Phone:  212-389-5000
Fax:  212-389-5099
Email:  david.langlois@sutherland.com

Marguerite C. Bateman *
Steuart H. Thomsen*
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, NW
Washington, DC 20004
Phone: 202-383-0100
Fax: 202-637-3593
Email: marguerite.bateman@sutherland.com
      steuart.thomsen@sutherland.com
(*Admitted Pro Hac Vice)

*Attorneys for Defendants Thomas A. Brown, Andrea C. Hall, Donald H. Pratt, Gale E. Sayers, M. Jeannine Strandjord, and Timothy S. Webster, and nominal defendant American Century Mutual Funds, Inc., doing business as American Century Ultra Fund*

10

8627295.2