## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAURA SEIDL, individually, derivatively and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br> vs.<br><br>AMERICAN CENTURY COMPANIES, INC., AMERICAN CENTURY INVESTMENT MANAGEMENT, INC., JAMES E. STOWERS, JR., JAMES E. STOWERS, III, JONATHAN S. THOMAS, THOMAS A. BROWN, ANDREA C. HALL, DONALD H. PRATT, GALE A. SAYERS, M. JEANNINE STRANDJORD, TIMOTHY S. WEBSTER, WILLIAM M. LYONS, MARK MALLON, WADE SLOME, BRUCE WIMBERLY and JERRY SULLIVAN,<br><br>    Defendants.<br><br>  and<br><br>AMERICAN CENTURY MUTUAL FUNDS, INC., doing business as AMERICAN CENTURY ULTRA FUND,<br><br>    Nominal Defendant. | INDEX No. 08-CV-8857 (DLC)<br>ECF Case<br><br><br>**INSTITUTIONAL DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS** |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

I.      PLAINTIFF'S COMMON LAW CLAIMS MUST BE DISMISSED AS A
        MATTER OF LAW .................................................................................... 2

        A.      Plaintiff Has Not Sufficiently Pled Proximate Cause ........................... 2

        B.      Plaintiff Has Not Sufficiently Pled Breach of Duty............................... 4

                1.      Plaintiff's Arguments Concerning Breach of Criminal Laws Fail ........... 6

                        a.      Plaintiff Has Not Alleged a Violation of 18 U.S.C. 1955............. 7

                        b.      Plaintiff Has Not Alleged a Violation of RICO........................... 8

                2.      Even Assuming a Criminal Violation, Plaintiff Has Not
                        Sufficiently Alleged Bad Faith ................................................ 10

                3.      Even Assuming a Criminal Violation, Plaintiff Has Not
                        Sufficiently Alleged that Defendants' Acts Constituted Negligence
                        Per Se ...................................................................................... 10

                4.      Plaintiff Has Not Alleged the Fund's Investment in PartyGaming
                        Was Unreasonable in Relation to the Fund's Overall Investment
                        Plan ......................................................................................... 11

        C.      Maryland Law Does Not Recognize an Independent Breach of Fiduciary
                Duty Claim......................................................................................... 12

        D.      Plaintiff Has Not Stated a Legally Sufficient Waste Claim.................................. 13

II.     PLAINTIFF HAS NO STANDING TO PURSUE DIRECT CLAIMS ......................... 14

III.    PLAINTIFF HAS FAILED TO PROPERLY PLEAD DEMAND OR DEMAND
        FUTILITY................................................................................................ 16

CONCLUSION.................................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Agency Rent-A-Car, Inc. v. Gateway Indus., Inc.*,
    No. 6109, 1980 WL 3040 (Del. Ch. 1980) ............................................................14

*Caroline v. Reicher*,
    304 A.2D 831 (MD. 1973) ............................................................. 4

*Collins v. Li*,
    933 A.2d 528 (Md. Ct. Spec. App. 2007) ................................................4

*Delta Star, Inc. v. Patton*,
    76 F. Supp.2d 617 (W.D. Pa. 1999) .......................................................14

*Derdiarian v. Felix Contr'ng. Corp.*,
    51 N.Y.2d 308 (1980) ...................................................................4

*Forsythe v. Sun Life Fin., Inc.*,
    417 F. Supp. 2d 100 (D. Mass. 2006) ....................................................16

*In re Goldman Sachs Mut. Funds Fee Litig.*,
    No. 04-CV-2567, 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006) (Buchwald, J.) ......................16

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989) ....................................................................9

*Hamilton v. Allen*,
    396 F. Supp. 2d 545 (E.D. Pa. 2005) .....................................................16

*Hogan v. Baker*,
    No. A 305-CV-0073P, 2005 WL 1949476 (N.D. Tex. Aug. 12, 2005)..................................16

*Hollander v. Breeze Corps., Inc.*,
    26 A.2d 507 (N.J. Ch. 1941) .............................................................14

*In re MasterCard Int'l Inc.*,
    313 F.3d 257 (5th Cir. 2002) ............................................................10

*Int'l Bhd. of Teamsters v. Willis Corroon Corp. of Md.*,
    802 A.2d 1050 (Md. 2002) ............................................................12, 13

*Kann v. Kann*,
    690 A.2d 509 (Md. 1997) ............................................................12, 13

*Kriz v. Schum*,
   75 N.Y.2d 25 (1989) ............................................................................................4

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
   191 F.3d 229 (2d Cir. 1999) ................................................................................3

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006) ................................................................................3

*Lombard v. Booz-Allen & Hamilton, Inc.*,
   280 F.3d 209 (2d Cir. 2002) ................................................................................4

*McBrearty v. Vanguard Group, Inc.*,
   No. 08-CV-7650, 2009 WL 875220 (S.D.N.Y. April 2, 2009), *aff'd,* No. 09-CV-1445,
   2009 WL 4019799 (2nd Cir. Nov. 23, 2009) ..........................................2, 3, 4, 11

*Mona v. Mona Elec. Group, Inc.*,
   934 A.2d 450 (Md. Ct. Spec. App. 2005) ....................................................5, 6, 13

*N.A.A.C.P. v. Golding*,
   679 A.2d 554 (Md. 1996) ....................................................................................6

*Newell v. Runnels*,
   967 A.2d 729 (Md. 2009) ....................................................................................6

*Palka v. Servicemaster Mgmt. Servs. Corp.*,
   83 N.Y.2d 579 (1994) ........................................................................................12

*Parish v. Md. & Va. Milk Producers Ass'n.*,
   242 A.2d 512 (Md. 1968) ..............................................................................13, 14

*Rivers v. Hagner Mgmt. Corp.*,
   959 A.2d 110 (Md. Ct. Spec. App. 2008) ..........................................................11

*Shenker v. Laureate Education, Inc.*,
   983 A.2d 408 (Md. 2009) ....................................................................5, 6, 13

*Sindler v. Litman*,
   887 A.2d 97 (Md. Ct. Spec. App. 2005) ..............................................................3

*Spool v. World Child Int'l Adoption Agency*,
   520 F.3d 178 (2d Cir. 2008) ............................................................................8, 9

*Stegall v. Ladner*,
   394 F. Supp. 2d 358 (D. Mass. 2005) ................................................................16

*Storetrax.com, Inc. v. Gurland*,
   915 A.2d 991 (Md. 2007) ..................................................................................13

*Strigliabotti v. Franklin Res., Inc.*,
   No. C-04-00883, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005) ..........................................15, 16

*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*,
   845 A.2d 1031 (Del. 2004) ..........................................................................................15

*United States v. Bridges*,
   493 F.2d 918 (5th Cir. 1974) .........................................................................................8

*United States v. Cohen*,
   260 F.3d 68 (2d Cir. 2001)...........................................................................................10

*United States v. Gotti*,
   459 F.3d 296 (2d Cir. 2006)..........................................................................................10

*Vinogradova v. Suntrust Bank, Inc.*,
   875 A.2d 222 (Md. Ct. Spec. App. 2005) ........................................................................13

*Werbowsky v. Collomb*,
   766 A.2d 123 (Md. 2001) .........................................................................................5, 6

**STATUTES**

18 U.S.C.
   § 1955.......................................................................................................2,6–10
   § 1961........................................................................................................8
   § 1962....................................................................................................1, 2, 6, 10

FED. R. CIV. P.
   8(a)(2) ......................................................................................................7
   12(b)(6) .....................................................................................................1

MD. CODE ANN., CORPS. & ASS'NS § 2-405.1 .................................................................4,5,6

United Kingdom Financial Services and Markets Act of 2000, § 75(5) ....................................7, 8

**OTHER AUTHORITIES**

H.R. Rep. No. 91-1549, § 802 (1970), reprinted in 1970 U.S.C.C.A.N. 4007..............................8
London Stock Exchange Admission & Disclosure Standard 1.5(a) ...........................................7
Organized Crime Control Act of 1970, PUB L. 91-452, 84 Stat. 922-23 .....................................11
United Kingdom Listing Authority Publications, List!, No. 18, at 1 (March 2008) ......................8

Pursuant to Fed R. Civ. P. 12(b)(6), defendants American Century Companies, Inc. ("ACC"), American Century Investment Management, Inc. ("ACIM"), James E. Stowers, Jr., James E. Stowers, III, Jonathan S. Thomas, William M. Lyons, Mark Mallon, Wade Slome, Bruce Wimberly, and Jerry Sullivan (together, "Institutional Defendants"), respectfully submit the following reply to Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss ("Opposition").

## PRELIMINARY STATEMENT

Plaintiff's Opposition cannot save her inadequately pleaded Second Amended Verified Derivative and Class Action Complaint ("Second Amended Complaint" or "SAC") from the inevitable result of dismissal.  As Plaintiff has now conceded the dismissal of her civil RICO claims, she desperately assembles facts and cases to present new arguments in support of her common law claims.  But these too must fail.  All that can be said for Plaintiff's allegations regarding the Institutional Defendants' behavior (as set forth in the Second Amended Complaint) is that one or more of these defendants made a decision to invest mutual fund money in publicly-traded shares of a company (PartyGaming) that was both (i) being touted on Wall Street as a good investment, albeit with significant risks attached, and (ii) engaged in an activity that the Department of Justice had stated it believed to be illegal, but which the Fifth Circuit court had decided was not illegal and which the DOJ had never acted against.  Out of these facts, Plaintiff contrives a criminal conspiracy to own and operate an illegal gambling business, a conspiracy she alleges is dispositive of her common law claims.  Nothing could be further from the truth.

Plaintiff's common law claims must fail for several distinct reasons.  First, as with her civil RICO claims, Plaintiff has not pled sufficient proximate causation.  Although the RICO proximate causation standard is at times stricter than at common law, that is not the case where, as here, the underlying rationale is equally applicable to both RICO and common law claims.

Second, Plaintiff has failed to adequately plead breach of duty.  Plaintiff argues that the Defendants criminally violated 18 U.S.C. Sections 1955 and 1962, and that this violation is dispositive of their motion to dismiss.  But a mere purchase of shares in a publicly traded company cannot constitute violations of these Sections.  Third, Plaintiff's corporate waste allegation must fail.  Plaintiff has yet to explain how the American Century Ultra Fund (the "Fund") failed to receive *any* consideration when it purchased publicly-traded PartyGaming shares, especially given that the Fund sold those shares for valuable consideration and the shares were never valued at zero.  Finally, Plaintiff's alleged injury is derivative and not direct, and Plaintiff has failed to plead adequate demand futility.

Plaintiff's claims under the common law are thus as baseless as her civil RICO claims, and they too should be dismissed with prejudice.

## ARGUMENT

## I.  PLAINTIFF'S COMMON LAW CLAIMS MUST BE DISMISSED AS A MATTER OF LAW

### A.  Plaintiff Has Not Sufficiently Pled Proximate Cause

Plaintiff has not adequately pled proximate cause, and thus her claims for breach of fiduciary duty, negligence and waste should be dismissed.  Plaintiff argues that, although this Court's decision in *McBrearty v. Vanguard Group, Inc*., No. 08-CV-7650, 2009 WL 875220 (S.D.N.Y. April 2, 2009), *aff'd,* No. 09-CV-1445, 2009 WL 4019799 (2nd Cir. Nov. 23, 2009), is dispositive of her civil RICO claims, it is not dispositive of her common law claims.  (Opp. at 2, 19–20.)

As the Institutional Defendants argued in their moving brief (Inst. Def. Br. at 15-17), *Vanguard* is dispositive of Plaintiff's common law claims because the underlying rationale of the Court's decision is equally applicable to those claims.  To establish proximate cause for both civil RICO and common law claims, a plaintiff must show that the defendant, rather than a third

party, directly caused their injury—that there is no "superseding" or "intervening" cause.  *See*

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 285 n.6 (2d Cir. 2006) (explaining that if a third party

injures a plaintiff rather than the defendant, no "direct link" exists between the plaintiff and

defendant); *Sindler v. Litman*, 887 A.2d 97, 115 (Md. Ct. Spec. App. 2005) (explaining that a

third party can constitute a "superseding cause," which terminates the original tortfeasor's

liability).  Even though the proximate cause standard under civil RICO is at times stricter than at

common law, RICO proximate cause is "equally applicable" to common law claims where the

underlying rationale is that no such "direct link" existed between a defendant's act and a

plaintiff's alleged injury.  *Lerner*, 459 F.3d at 285 n.6 ("Because proximate cause under RICO

and under New York common law each requires a showing of 'direct injury,' our conclusion that

such injury was lacking was equally applicable to both the federal and state causes of action.");

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 238–39, 243 (2d

Cir. 1999) (dismissing both plaintiffs' civil RICO and common law claims because a third party,

rather than the defendant, caused plaintiff's injuries).

      Plaintiff does not address the fact that her alleged injury was caused by a government

crackdown (*see* SAC ¶¶ 1, 65, 86–87, 92) rather than Defendants' decision to invest in the

company, which the *Vanguard* court recognized constituted a superseding cause that broke any

direct link between Defendants' actions and Plaintiff's alleged injury.  *See Vanguard,* 2009 WL

875220 at *3.  This rationale is as applicable to Plaintiff's common law claims as it is to

Plaintiff's civil RICO claims.

      Although Plaintiff argues that proximate cause is an issue of fact that the Court should

not decide on a motion to dismiss (Opp. at 15–19, 24–25), under the facts Plaintiff alleges, the

Court can decide proximate cause as an issue of law.  When "the evidence presented and the

logical inferences deducible therefrom admit of but one conclusion, the question [of proximate cause] becomes one of law." *Collins v. Li*, 933 A.2d 528, 548–49 (Md. Ct. Spec. App. 2007) (quoting *Caroline v. Reicher*, 304 A.2d 831, 835 (Md. 1973)).  Unlike in the cases she cites in her Opposition, Plaintiff does not complain of the collapse of a contract or a complicated personal injury tort, where proximate cause depends upon the credibility of witnesses and the examination of physical evidence.  *See Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir. 2002) (intentional interference with contract); *Kriz v. Schum*, 75 N.Y.2d 25, 29 (1989) (water slide used to dive into shallow end of pool); *Derdiarian v. Felix Contr'ng. Corp.*, 51 N.Y.2d 308, 312 (1980) (epileptic seizure leading to work site accident).  Instead, Plaintiff alleges a simple sequence of events: that Defendants purchased shares in a corporation, and that that corporation's stock lost value due to law enforcement action.  (SAC ¶¶ 51, 86–87.)  These types of allegations are especially amenable to resolution as an issue of law.  As the court held in the *Derdiarian* decision Plaintiff cites, "[t]here are certain instances . . . where only one conclusion may be drawn from the established facts and where the question of legal cause may be decided as a matter of law.  Those cases generally involve *independent intervening acts which operate upon but do not flow from the original negligence*."  51 N.Y.2d at 315 (italics added).

Plaintiff has thus failed to explain why the Second Circuit's holding in *Vanguard* should not apply to her common law claims.[1]

## B.    Plaintiff Has Not Sufficiently Pled Breach of Duty

Plaintiff has also failed to adequately plead that Defendants have breached the fiduciary duties they owe her.  Those duties are governed by Section 2-405.1 of Maryland's[2] Business and

---

[1] Plaintiff responds to the Institutional Defendants' efficient market argument addressing the risk of the Defendants' investment in PartyGaming with an argument regarding cause.  (Opp. at 14–15.)  Plaintiff misunderstands the Institutional Defendants' argument, which is addressed to breach of duty and not causation.  (Inst. Def. Br. at 18 n.10.)

Associations Code.[3]  *See* MD. CODE ANN., CORPS. & ASS'NS § 2-405.1.  Plaintiff argues, citing to

*Shenker v. Laureate Education, Inc.*, 983 A.2d 408 (Md. 2009), either that Section 2-405.1 does

not control this case or that Defendants owe her additional duties beyond those codified in the

statute.  (Opp. at 9–10.)  But, as *Shenker* explains, Section 2-405.1 governs Defendants'

fiduciary duties when they are engaged in managing a corporation's business and affairs.  *See*

*Shenker*, 983 A.2d at 420 ("It is without question that § 2-405.1(a) governs the duty of care owed

by directors when they undertake managerial decisions on behalf of the corporation.").  The

decisions that underlie Plaintiff's allegations of breach of duty—choosing investments,

reviewing those choices—are all decisions that relate to corporate business or affairs.  Section 2-

405.1 therefore provides the applicable standard in this case.

Plaintiff argues that, even if Section 2-405.1 does govern this case, she has pled sufficient

allegations to survive a motion to dismiss.  (Opp. at 11–15.)  The Institutional Defendants

disagree.  Plaintiff has failed to articulate the correct standard under Section 2-405.1.  Section 2-

405.1(e) codifies Maryland's common law business judgment rule.  *Mona v. Mona Elec. Group,*

*Inc.*, 934 A.2d 450, 463–64 (Md. Ct. Spec. App. 2005).  Under this deferential standard,

directors are presumed to act in good faith, in the best interests of the corporation, and with due

---

[2]As the Institutional Defendants argued in their moving brief, Maryland law governs Plaintiff's common law claims.  (Inst. Def. Br. at 8 n.4.)  Plaintiff's argument that the "internal affairs" rule does not apply to her common law claims because they do not pertain to the management of a corporation (Opp. at 2–4) is unavailing.  Her claims absolutely pertain to the management of a corporation, since she has alleged that corporate directors, managers and officers have breached their duties of care and fiduciary duties to the corporation and its shareholders and mismanaged corporate assets.  (SAC ¶¶ 210, 215, 221, 243, 250.)  These duties are at the heart of a corporation's internal affairs, and Maryland law should thus apply.

[3]Because officer liability is derivative of the duty corporate directors owe shareholders, Section 2-405.1 applies equally to corporate directors and the corporate officers they appoint.  *Werbowsky v. Collomb*, 766 A.2d 123, 133 (Md. 2001).  Similarly, any duties that American Century Investment Management or individual portfolio managers owed to Plaintiff were creatures of contract, and derivative of the corporate directors' duties to Plaintiff.  *See id.*

care.  CORPS. & ASS'NS § 2-405.1(e).  To overcome this presumption, Maryland courts rely on a test "predicated on concepts of gross negligence." *Werbowsky*, 766 A.2d at 138.  In Maryland, "gross negligence is 'an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them.'" *Newell v. Runnels*, 967 A.2d 729, 764 (Md. 2009) (footnote omitted) (citations omitted).

Maryland therefore requires plaintiffs to allege that defendants acted in bad faith or with similar culpability before a court will review whether a defendant acted with undue care.  The more recent *Shenker* decision provides an even stricter test, tightening up the circumstances under which a director can be found liable for having acted in a manner outside the protections of the business judgment rule:  "[T]he business judgment rule protects a disinterested director from liability to the corporation and its stockholders by insulating the business decisions made by the director from judicial review, *absent a showing of fraud, self-dealing, unconscionable conduct, or bad faith.*"  *Shenker*, 983 A.2d at 424 (emphasis added); *see also  N.A.A.C.P. v. Golding*, 679 A.2d 554, 559 (Md. 1996); *Mona*, 934 A.2d at 463–64 ("[T]he business judgment rule in Maryland requires proof sufficient to overcome a presumption of good faith and adequate information before the court will receive evidence [addressing whether defendant acted with self-interest or undue care]." (citation omitted)).

### 1.    Plaintiff's Arguments Concerning Breach of Criminal Laws Fail

To overcome her burden under Section 2-405.1, Plaintiff argues that Defendants acted in bad faith or that their acts constituted negligence *per se* because they "knowingly violated" 18 U.S.C. Sections 1955 and 1962.  (Opp. at 7–8, 11.)  But the purchase of shares in PartyGaming did not violate either statute.

### a.      Plaintiff Has Not Alleged a Violation of 18 U.S.C. 1955

Section 1955 imposes criminal liability on anyone who "conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business."[4]  18 U.S.C. § 1955(a). Plaintiff can cite no authority[5] for her claim that the mere purchase of publicly traded stock can be a violation of Section 1955 (SAC ¶ 5), nor has research revealed any such case.  Furthermore, Plaintiff's theory makes little sense as a matter of statutory interpretation.  The first five activities prohibited under Section 1955 (from "conducting" to "directing") require active involvement, which is not even suggested here.  To bring Plaintiff's allegations within the scope of the sixth prohibited activity ("ownership"), the Court would have to read the operative language of the statute expansively and past the point of coherence: the Court would have to find that anyone who purchases even one share of a publicly traded gaming company is criminally responsible under federal law for "owning" an illegal gambling business.[6]  Such a reading, if adopted, would

---

[4] The gambling business must also violate "the law of a State or political subdivision in which it is conducted."  18 U.S.C. 1955(b)(1)(i).  Plaintiff's twice-amended Complaint still fails to allege that PartyGaming violated any specific state or local law.  Plaintiff's failure to provide Defendants with notice of her claim is yet another reason she cannot rely on Section 1955 or RICO violations to support her common law arguments, including for negligence *per se*, ultra vires waste and bad faith.  *See* FED. R. CIV. P. 8(a)(2).

[5] In their earlier Motion for Judgment on the Pleadings, the Institutional Defendants asserted the same argument.  (Inst. Defs.' Br. Judg. Plead. (July 2, 2009) at 8–10.)  In response, plaintiff did not cite any cases to support her argument that a purchase of shares violates Section 1955.  (Opp. Judg. Plead. (Aug. 28, 2009) at 53–55.)

[6] Investors in publicly traded companies have an expectation that their purchase of publicly traded stock will not subject them to criminal liability.  For example, the London Stock Exchange ("LSE"), on which PartyGaming is listed (*see* SAC ¶ 3) and the UK Listing Authority ("UKLA"), which regulates the securities on the LSE, both conduct reviews of companies prior to listing.  The LSE admission standards state that an application may be refused if "admission of the securities may be **detrimental to** the orderly operation of the Exchange's markets or to **the integrity of such markets** . . . ."  LSE Admission & Disclosure Standard 1.5(a) (*available at* http://www.londonstockexchange.com/companies-and-advisors/main-market/documents/brochures/admission-and-disclosure-standards.pdf) (emphasis added).  The UKLA will similarly reject a listing if "granting it would be **detrimental to the interests of investors**."  United

subject untold thousands of individuals to possible criminal prosecution under RICO.  Such an interpretation would fly in the face of the spirit of the case law and Section 1955's legislative history.[7]  Thus, Plaintiff's argument that Defendants violated Section 1955 fails.

### b.  Plaintiff Has Not Alleged a Violation of RICO

Because Plaintiff's alleged RICO "predicate act" is a violation of Section 1955, her argument that Defendants violated RICO also fails for the reasons set forth above.

Furthermore, Plaintiff's arguments for a RICO violation also fail because Plaintiff fails to plead the required "pattern of racketeering activity."  *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).  Plaintiff fails to establish such a pattern for two reasons.  *First*, Plaintiff has failed to allege that Defendants' conduct constituted more than one "act of racketeering activity."  *See* 18 U.S.C. § 1961(5) (defining a "pattern of racketeering activity" to "require[] at least two acts of racketeering activity").  Plaintiff has in essence only alleged a single act: ownership of the stock of PartyGaming.  Although she has alleged numerous

---

Kingdom Financial Services and Markets Act of 2000, § 75(5) (available at http://www.opsi.gov.uk/acts/acts2000/ukpga_20000008_en_1) (emphasis added).

Moreover, the UKLA has specifically stated that its pre-listing review includes an assessment of potential illegality:  "Part VI of the [Financial Services and Markets Act] imposes on us the obligation to consider whether an application for listing has the potential to cause detriment to investors. There are several reasons why this test might become relevant. **There could be the risk that the company is engaging in activity as part of its business model that is illegal, or that the management or founders of the company have criminal associations**."  UKLA PUBLICATIONS, LIST!, No. 18, at 1 (March 2008) (available at http://www.fsa.gov.uk/pubs/ukla/list_mar08.pdf) (emphasis added).

[7] Congress intended that Section 1955 reach "only those persons who prey systematically upon our citizens and whose syndicated operations are so continuous and so substantial as to be of national concern" and are of "considerably greater magnitude than simply meet[ing] the [minimum] definitions."  H.R. Rep. No. 91-1549, § 802 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4007, 4029.  Courts have consistently found that Section 1955 should be read narrowly.  *See, e.g.*, *United States v. Bridges*, 493 F.2d 918, 922 (5th Cir. 1974) ("To construe these provisions as urged by the government would not further the congressional purpose, for such a broad construction could subject almost any small gambling operation to federal regulation. This is clearly not the function of § 1955.").

*purchases* of PartyGaming stock, it is not the "purchase" of stock that is allegedly illegal under Section 1955, but rather the "own[ership]" of an illegal gambling business.  *See* U.S.C. § 1955(a).

*Second*, Plaintiff has not established the necessary "continuity" courts require to find a "pattern of racketeering activity."  *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237–41 (1989) ("To establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity.") (emphasis in original).  Continuity can be established by showing either *closed-ended continuity* (*i.e.*, a sufficiently long period of past conduct) or *open-ended continuity* (*i.e.*, a threat of future repetition). *Id.* at 241.  Plaintiff has not pled any acts that would constitute open-ended continuity, since she has not alleged any continuing illegal conduct and has instead specifically alleged that ACMF sold all of its shares in PartyGaming in July 2006 (SAC ¶ 63).  Plaintiff also has not established (and cannot establish) closed-ended continuity, since she alleges only that ACMF purchased shares in PartyGaming from June 2005 to July 2006 (SAC ¶ 55.)—a one-year period—and the Second Circuit has held that as a general rule, closed-ended continuity requires at least two years of activity.  *Spool*, 520 F.3d at 184 ("[a]lthough we have not viewed two years as a bright-line requirement, it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity, particularly where . . . '[t]he activities alleged involved only a handful of participants' and do not involve a 'complex, multi-faceted conspiracy.'") (citation omitted); *see also H.J.*, 492 U.S. at 242 ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the continuity] requirement: Congress was concerned in RICO with longterm criminal conduct").

For these reasons, Plaintiff has failed to allege that Defendants violated either Section 1955 or RICO.  Because Plaintiff relies on these violations to establish bad faith and negligence *per se*, those arguments must fail as well.

>    **2.    Even Assuming a Criminal Violation, Plaintiff Has Not Sufficiently Alleged Bad Faith**

Even were the Court to decide that ACMF's investment in PartyGaming was illegal, Plaintiff still has not sufficiently alleged that Defendants acted in bad faith by knowingly violating the law.  As explained in the Institutional Defendants' moving brief, whether PartyGaming was an "illegal gambling business" was not established law in 2005.  (*See* Inst. Defs.' Br. at 19–21.)  Plaintiff cites two cases in her Opposition she claims establish the law in 2005.  (Opp. at 15.)  But the first case she cites, *United States v. Cohen*, 260 F.3d 68, 71 (2d Cir. 2001), is a Wire Act case.  In 2002, the Fifth Circuit held that the Wire Act did not apply to the non-sports gambling that PartyGaming engaged in.  *In re MasterCard Int'l Inc.*, 313 F.3d 257, 263 (5th Cir. 2002).  The second case she cites, *United States v. Gotti*, 459 F.3d 296 (2d Cir. 2006), is no more helpful, as it was decided in July 2006.  Plaintiff alleges that Defendants began to *sell* their stake in PartyGaming during that month, and had no stake in the corporation by the end of it.  (SAC ¶¶ 62–64.)  To establish what the law was in 2005, Plaintiff also relies on PartyGaming co-founder Anurag Dikshit's 2008 guilty plea and PartyGaming's 2009 non-prosecution agreement.  (Opp. at 15; SAC ¶¶ 77, 78.)  But these subsequent events cannot establish the state of the law in 2005.  Plaintiff has therefore failed to allege that Defendants could have known they were violating the law in 2005, thereby acting in bad faith.

>    **3.    Even Assuming a Criminal Violation, Plaintiff Has Not Sufficiently Alleged that Defendants' Acts Constituted Negligence *Per Se***

Similarly, even were the Court to find that Defendants violated Sections 1955 and RICO, Plaintiff still has failed to adequately allege negligence *per se*.  Negligence *per se* requires that

the plaintiff be in the "specific class of persons" the statute was designed to protect. *Rivers v. Hagner Mgmt. Corp.*, 959 A.2d 110, 122 (Md. Ct. Spec. App. 2008). Plaintiff selectively quotes language from the preface of the Organized Crime Control Act of 1970 ("OCCA")—the law that enacted Section 1955 and RICO—to argue that these statutes were designed to protect "innocent investors" such as herself. (Opp. at 8 n.7.) But even a cursory reading of the preface[8] shows that Congress intended to protect investors in *competing* businesses, whose industries were being infiltrated by illegally-funded criminal syndicates. *See* Organized Crime Control Act of 1970, Pub L. 91-452, 84 Stat. 922-23. As the Court explained in *Vanguard*, even if there had been criminal violations, Plaintiff was not among the "intended targets," but among the "intended beneficiaries." *See Vanguard*, 2009 WL 875220 at *3. Because she was not in the specific class of persons these statutes were designed to protect, Plaintiff cannot rely on negligence *per se* to establish negligence in this matter.

### 4. Plaintiff Has Not Alleged the Fund's Investment in PartyGaming Was Unreasonable in Relation to the Fund's Overall Investment Plan

Finally, even if the Court decides to review Defendants' actions, it should find Defendants did not breach the duty of care they owed to Plaintiff.[9] Plaintiff has failed to even

---

[8] The full language is as follows: "The Congress finds that (1) organized crime in the United States is a highly sophisticated, diversified, and widespread activity that annually drains billions of dollars from America's economy by unlawful conduct and the illegal use of force, fraud, and corruption; (2) organized crime derives a major portion of its power through money obtained from such illegal endeavors as syndicated gambling, loan sharking, the theft and fencing of property, the importation and distribution of narcotics and other dangerous drugs, and other forms of social exploitation; (3) this money and power are increasingly used to infiltrate and corrupt legitimate business and labor unions and to subvert and corrupt our democratic processes; (4) organized crime activities in the United States weaken the stability of the Nation's economic system, harm innocent investors and competing organizations, interfere with free competition, seriously burden interstate and foreign commerce, threaten the domestic security, and undermine the general welfare of the Nation and its citizens[.]" 84 Stat. 922–23.

[9] In her Opposition, Plaintiff cites a number of New York cases to argue that foreseeability is an issue of fact. (Opp. at 15–20, 24–25.) However, insofar as Plaintiff argues that the reasoning of

address why the Fund's investment in PartyGaming was an unreasonable risk in relation to the

Fund's overall investment plan.  (Opp. at 12–19.)  And as the Institutional Defendants explained

in their moving brief, to the extent that Plaintiff's allegations of breach of duty rest upon the

assumption that PartyGaming was a bad investment because it carried risk, Plaintiff's claim must

be denied as a matter of law.  (*See* Inst. Defs.' Br. at 21–23.)

### C.    Maryland Law Does Not Recognize an Independent Breach of Fiduciary Duty Claim

Plaintiff contends that Maryland does in fact recognize an independent breach of

fiduciary duty claim, but Maryland law to the contrary is clear and well-established.  (Opp. at 4–

7.)  As the Maryland Court of Appeals has stated: "[A]lthough the breach of a fiduciary duty

may give rise to one or more causes of action, in tort or in contract, Maryland does not recognize

a separate tort action for breach of fiduciary duty."  *Int'l Bhd. of Teamsters v. Willis Corroon

Corp. of Md.*, 802 A.2d 1050, 1052 n.1 (Md. 2002).  Plaintiff quotes language from the Court of

Appeals' decision in *Kann v. Kann*, 690 A.2d 509 (Md. 1997), as supporting her argument that

an independent breach of fiduciary duty claim exists in Maryland.  (Opp. at 5–6.)  But in context,

the language from *Kann* could not be clearer:

> Accordingly, we hold that there is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries.  This does not mean that there is no claim or cause of action available for breach of fiduciary duty.  Our holding means that identifying a breach of fiduciary duty will be the beginning of the analysis, and not its conclusion.  Counsel are required to identify the particular fiduciary relationship involved, identify how it was breached, consider the remedies available, and select those remedies appropriate to the client's problem.

---

these cases extends to duty, she misstates the law: "Unlike foreseeability and causation, which are issues generally and more suitably entrusted to fact finder adjudication, the definition of the existence and scope of an alleged tortfeasor's duty is usually a legal, policy-laden declaration reserved for Judges to make prior to submitting anything to fact-finding or jury consideration." *Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 585 (1994).

*Kann*, 690 A.2d at 521.  In Maryland, breach of fiduciary duty is not a valid cause of action standing alone.  Therefore, Maryland courts require plaintiffs who seek redress for a fiduciary injury to identify a genuine cause of action under which to plead their case.

Plaintiff cites a number of cases in her Opposition that she argues show Maryland courts recognize an independent claim for breach of fiduciary duty.  (Opp. at 4–5.)  Several of these citations are to language that simply recognizes that fiduciaries owe fiduciary duties.  (*Id.*)  But that assertion is uncontroversial.  Plaintiff also cites to three Maryland cases which, in varying ways, refer to "breach of fiduciary duty claims."  *See Shenker*, 983 A.2d at 417; *Storetrax.com, Inc. v. Gurland*, 915 A.2d 991, 997 (Md. 2007); *Mona*, 934 A.2d at 461.  But these cases' shorthand method of describing a claim by its underlying duty does not establish that Maryland recognizes an independent breach of fiduciary duty cause of action.  Certainly, none of these cases overrule or distinguish the clear language of *Kann* and *Teamsters* to the contrary.  *See id.*; *Teamsters*, 802 A.2d at 1052 n.1; *Kann*, 690 A.2d at 521; *Vinogradova v. Suntrust Bank, Inc.*, 875 A.2d 222, 230–31 (Md. Ct. Spec. App. 2005).

### D.    Plaintiff Has Not Stated a Legally Sufficient Waste Claim

Finally, Plaintiff's corporate waste claim should also be dismissed.  Plaintiff argues that "Defendants read Delaware law too narrowly as to the scope of a claim for waste."  (Opp. at 25–26.)  But each of the cases Plaintiff cites supports Defendants' analysis that, in both Maryland and Delaware, corporations must receive little to no consideration for a claim of waste to succeed.  (Inst. Defs.' Br. at 23–25.)  In *Parish*, for example, the issue was a suspiciously one-sided transaction that the court considered a "gift."  *Parish v. Md. & Va. Milk Producers Ass'n.*, 242 A.2d 512, 543 (Md. 1968).  The purchasers paid no money down (apart from assets belonging to the purchased corporation), and signed unsecured loans amounting to $5,000,000.  *Id.*  The court believed the corporate officers never intended the corporation to receive

consideration for the sale.  *Id.*  The three other cases are similarly one-sided.  Each involved a self-dealing corporate director or officer arranging for additional compensation at the expense of the company.  *See Delta Star, Inc. v. Patton*, 76 F. Supp.2d 617, 634–35 (W.D. Pa. 1999) (President and Chairman arranging for "excessive" retirement benefits); *Agency Rent-A-Car, Inc. v. Gateway Indus., Inc.*, No. 6109, 1980 WL 3040 at *5 (Del. Ch. 1980) (President abusing corporate credit cards and spending corporate funds on "female companionship"); *Hollander v. Breeze Corps., Inc.*, 26 A.2d 507, 510, 521 (N.J. Ch. 1941) (President and director committing fraud on the corporation).  None of these cases changes the fact that PartyGaming's shares were publicly traded at the time the Fund purchased them, and therefore presumably had the exact value the Fund paid for them.

Plaintiff argues as well that Defendants' purchase of PartyGaming stock was illegal and therefore ultra vires waste.  (Opp. at 26–27.)  But, as Institutional Defendants explained above, Plaintiff has failed to allege that Defendants violated any laws.  *See supra* Part I(B)(1).  Accordingly, Plaintiff has failed to sufficiently allege a claim for corporate waste, and that claim should be dismissed.

## II. PLAINTIFF HAS NO STANDING TO PURSUE DIRECT CLAIMS

In their moving brief, the Institutional Defendants argued that Plaintiff's direct claims should be dismissed because any alleged injury is derivative, not direct, pursuant to the two-part test set forth in *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004).  (Inst. Defs.' Br. at 8-11.)

In response, Plaintiff fails entirely to address the second part of the *Tooley* test, which looks at "who would receive the benefit of any recovery or other remedy."  *Tooley*, 845 A.2d at 1033.  Plaintiff thus does not dispute that any recovery would flow first to the corporation, and then indirectly to the shareholders of the Fund *pro rata—i.e.*, derivatively.

In response to the first part of the *Tooley* test—which asks "who suffered the alleged harm (the corporation or the suing stockholders, individually)," *Id.*—Plaintiff cites numerous cases for the proposition that a direct claim may be pursued if there is an injury distinct from that to the corporation (Opp. at 55-56.), and Plaintiff argues that her claims are direct because the injury alleged is only to shareholders of the Fund and not to ACMF itself.  (Opp. at 56-57.)

But Plaintiff misses the point of the direct-derivative distinction.  A claim is derivative if the injury to a shareholder is the diminution in the value of his or her shares because *corporate assets have been depleted.  See Tooley*, 845 A.2d at 1037.  When a harm to a shareholder is indirectly incurred through depletion of  corporate assets, the claim is derivative of the harm suffered by the corporation, and the shareholder must sue derivatively.  Plaintiff's argument that the Fund is only one of several series of shares issued by ACMF is thus of no consequence, since Plaintiff does not dispute that the alleged harm is directly suffered by ACMF (*i.e.*, ACMF's assets were allegedly depleted) and only derivatively suffered by the Fund's shareholders (*i.e.*, the harm allegedly suffered by Plaintiff is derivative of the depletion of ACMF assets).

Furthermore, while Plaintiff cites *Strigliabotti v. Franklin Res., Inc.*, No. C-04-00883, 2005 WL 645529 *8 (N.D. Cal. Mar. 7, 2005) for the proposition that "state law claims brought based on individual injuries suffered by shareholders, not injury to the Funds themselves, [are] direct claims because of the unique nature and structure of mutual funds" (Opp. at 57), that decision has been rejected by every court that has considered it.  For example, in *In re Goldman Sachs Mut. Funds Fee Litig.*, No. 04-CV-2567, 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006) (Buchwald, J.), this Court wrote that:

> We are not persuaded that [the *Strigliabotti*] holding . . . is consistent with Delaware law.  Rather, a pro rata bearing of expenses by individual shareholders seems to fall within the very essence of an injury which is not independent from that suffered by the corporation. . . .  Indeed, if the

> only injury to an investor is the indirect harm which consists of the diminution in the value of his or her shares, *the suit must be derivative*."

*Id.* at \*6  (citations omitted) (italics added); *see also Stegall v. Ladner*, 394 F. Supp. 2d 358, 365 (D. Mass. 2005) (finding *Strigliabotti* "unpersuasive" and noting that its "description of mutual funds does not distinguish them in any material way from traditional corporations"); *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 112 (D. Mass. 2006) (finding *Strigliabotti* "unavailing" and "its reasoning unpersuasive"); *Hamilton v. Allen*, 396 F. Supp. 2d 545, 552 (E.D. Pa. 2005) (rejecting *Strigliabotti* holding because "[a]nalytically . . ., Plaintiffs seek essentially to recover for the diminution of assets *to the Funds*") (emphasis in original); *Hogan v. Baker*, No. A 305-CV-0073P, 2005 WL 1949476, \*4 (N.D. Tex. Aug. 12, 2005) ("[*Strigliabotti's*] reasoning is at odds with  the overwhelming majority of courts who have addressed this issue" and "*Strigliabotti* does not cite any applicable case law in reaching its holding").

## III.   PLAINTIFF HAS FAILED TO PROPERLY PLEAD DEMAND OR DEMAND FUTILITY

As discussed in the Institutional Defendants' moving brief (Inst. Defs.' Br. at 11-15) and the Fund and Independent Directors' moving brief (Fund and Ind. Dirs.' Br. at 9-20), Plaintiff has insufficiently pled demand or demand futility.  Plaintiff's arguments in her Opposition Brief regarding demand futility are unavailing for the reasons set forth in detail in the Fund and Independent Directors' Reply Brief (Fund and Ind. Dirs.' Reply Br. at 5-13), which the Institutional Defendants adopt and incorporate herein by reference.

////

////

////

////

////

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiff has failed to state a claim, and the Institutional

Defendants respectfully submit that the Second Amended Complaint should therefore be

dismissed with prejudice and without leave to amend.


Dated: February 19, 2010    Respectfully submitted,

           COOLEY GODWARD KRONISH LLP
           GORDON C. ATKINSON (GA-8337)
           BENJAMIN H. KLEINE (BK-1975)


           By:_____/s/ Gordon C. Atkinson_____
              Gordon C. Atkinson (GA-8337)

           1114 Avenue of the Americas
           New York, NY  10036-7798
           Telephone:  (212) 479-6000
           Facsimile:  (212) 479-6275
           E-mail:  atkinsongc@cooley.com
               bkleine@cooley.com

           Attorneys for Defendants
           American Century Companies, Inc., American
           Century Investment Management, Inc., James E.
           Stowers, Jr., James E. Stowers, III, Jonathan S.
           Thomas, William M. Lyons, Mark Mallon, Wade
           Slome, Bruce Wimberly, and Jerry Sullivan

1162283 v6/SF

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAURA SEIDL, individually, derivatively and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>AMERICAN CENTURY COMPANIES, INC., AMERICAN CENTURY INVESTMENT MANAGEMENT, INC., JAMES E. STOWERS, JR., JAMES E. STOWERS, III, JONATHAN S. THOMAS, THOMAS A. BROWN, ANDREA C. HALL, DONALD H. PRATT, GALE A. SAYERS, M. JEANNINE STRANDJORD, TIMOTHY S. WEBSTER, WILLIAM M. LYONS, MARK MALLON, WADE SLOME, BRUCE WIMBERLY and JERRY SULLIVAN,<br><br>        Defendants.<br><br>    and<br><br>AMERICAN CENTURY MUTUAL FUNDS, INC., doing business as AMERICAN CENTURY ULTRA FUND,<br><br>        Nominal Defendant. | INDEX No. 08-CV-8857 (DLC)<br>ECF Case<br><br><br>**CERTIFICATE OF SERVICE (FRCP 5)** |

I am a citizen of the United States and a resident of the State of California. I am employed in the City and County of San Francisco County, State of California, in the office of a member of the bar of this Court, at whose direction the service was made. I am over the age of eighteen years, and not a party to the within action. My business address is Cooley Godward Kronish LLP, 101 California Street, 5th Floor, San Francisco, California 94111-5800. On the date set forth below I served the documents described below in the manner described as follows:

1164283 v1/SF

- **INSTITUTIONAL DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

☐  (BY U.S. MAIL) I am personally and readily familiar with the business practice of Cooley Godward Kronish LLP for collection and processing of correspondence for mailing with the United States Postal Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at San Francisco, California.

☐  (BY MESSENGER SERVICE) by consigning the document(s) to an authorized courier and/or process server for hand delivery on this date.

☐  (BY FACSIMILE) I am personally and readily familiar with the business practice of Cooley Godward Kronish LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

☐  (BY OVERNIGHT MAIL) I am personally and readily familiar with the business practice of Cooley Godward Kronish LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by _____ for overnight delivery.

☒  (BY ELECTRONIC MAIL) I am personally and readily familiar with the business practice of Cooley Godward Kronish LLP for the preparation and processing of documents in portable document format (PDF) for e-mailing, and I caused said documents to be prepared in PDF and then served by electronic mail to the parties listed below.

on the following parties in this action:

**Attorneys for Plaintiff:**

Thomas I. Sheridan, III, Esq.
Andrea Bierstein, Esq.
Hanly Conroy Bierstein Sheridan Fisher &
Hayes, LLP
112 Madison Avenue
New York, NY  10016-7416
Telephone:    (212) 784-6400
tsheridan@hanlyconroy.com
abierstein@hanlyconroy.com

Gregory P. Erthal, Esq.
Rosalind M. Robertson, Esq.
SimmonsCooper, LLC
707 Berkshire Blvd.
East Alton, IL  62024
Telephone:    (618) 259-2222
gerthal@simmonscooper.com
rrobertson@simmonscooper.com

**Attorneys for Defendants and Nominal Defendant**
**THOMAS A. BROWN, ANDREA C. HALL, DONALD H. PRATT, GALE E. SAYERS,**
**M. JEANNINE STRANDJORD, TIMOTHY S. WEBSTER AND NOMINAL**
**DEFENDANT AMERICAN CENTURY MUTUAL FUNDS, INC.:**

2.

David P. Langlois, Esq.  
Sutherland Asbill & Brennan LLP  
1114 Avenue of the Americas, 40th Floor  
New York, NY  10036  
Telephone:    (212) 389-5000  
david.langlois@sutherland.com

Steuart H. Thomsen  
Sutherland Asbill & Brennan LLP  
1275 Pennsylvania Ave., NW  
Washington, DC 20004  
Telephone:    (202) 383-0166  
steuart.thomsen@sutherland.com

Marguerite C. Bateman  
Sutherland Asbill & Brennan LLP  
1275 Pennsylvania Ave., NW  
Washington, DC 20004  
Telephone:    (202) 383-0107  
marguerite.bateman@sutherland.com

Executed on February 19, 2010, at San Francisco, California.

/s/ Tammy Zughayer
Tammy Zughayer